**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**George BRATTON,**
**Defendant–Appellant.**

**No. 88–5581.**

United States Court of Appeals,
Fifth Circuit.

May 31, 1989.
Rehearing Denied July 5, 1989.

---

**1.** The plaintiff does not challenge, on appeal, the imposition of ten dollars for filing a frivolous lawsuit.

440

Mark Stevens, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Janet E. Bauerle, Gregory D. Anderson, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GOLDBERG, JOHNSON, and DUHE, Circuit Judges.

JOHNSON, Circuit Judge:

Defendant George Bratton appeals his conviction on six counts of aiding and abetting the commission of wire fraud and possession of stolen money in violation of 18 U.S.C. § 1343 and § 2315. On appeal, Bratton challenges the sufficiency of the evidence adduced at trial to support his conviction, as well as the admission of certain impeachment evidence by the district court. We reject both contentions of Bratton and affirm.

I. FACTS AND PROCEDURAL HISTORY

The arrest and conviction of defendant George Bratton for wire fraud and possession of stolen money stems from the unauthorized transfer of funds by Bratton's wife, Doris Bratton, during her employment from April 1982 until September 1987 as a market coordinator for the Diamond Shamrock Refining and Marketing Company in San Antonio, Texas. Among her duties as a market coordinator for Diamond Shamrock, Mrs. Bratton was responsible for administering the necessary paperwork on monetary "futures" accounts maintained by the New York broker for Diamond Shamrock, E.F. Hutton, and transferring large sums of money to and from the futures accounts through the use of a telephone fascimile machine located at the San Antonio office of Diamond Shamrock. As the records of transactions involving the futures accounts for Diamond Shamrock were not yet computerized during the employ of Mrs. Bratton as a market coordinator, Diamond Shamrock necessarily relied heavily on the representations of Mrs. Bratton concerning the status of its accounts and the transfer of its monies.

After serving approximately four years as a market coordinator for Diamond Shamrock, Mrs. Bratton, on July 16, 1986, sent an unauthorized telephone fascimile message to E.F. Hutton in New York requesting the transfer of $250,000 from a Diamond Shamrock futures account to an account at San Antonio Savings Association (SASA) styled "DJ's," which Mrs. Bratton represented to E.F. Hutton to be a subsidiary of Diamond Shamrock. In reality, Diamond Shamrock did not own such a subsidiary; rather, DJ's was a business solely owned by George Bratton who was the sole authorized signator on the DJ's account at SASA. Thereafter, in June 1987, Mrs. Bratton sent a second unauthorized telephone fascimile to E.F. Hutton requesting the transfer of $223,541 to an account at SASA styled "DJ's Dance Club."

Ultimately, the Brattons were indicted on several counts of wire fraud and receipt and possession of stolen property in violation of 18 U.S.C. § 1343 and § 2315. Mrs. Bratton subsequently entered into a plea agreement with the Government pursuant to which she pleaded guilty to two counts of wire fraud. At the subsequent jury trial of George Bratton, Mrs. Bratton testified on behalf of her husband. Specifically, Mrs. Bratton testified that George Bratton had not instructed, encouraged, or directed her in any manner to transfer the funds at Diamond Shamrock. Mrs. Bratton further stated that she informed her husband that the transferred funds were part of an inheritance from her recently deceased grandmother in Japan. Ultimately, however, the jury convicted Mr. Bratton of six

counts of aiding and abetting Mrs. Bratton in the commission of wire fraud and of possessing stolen property. After the district court denied his motion for judgment of acquittal, Mr. Bratton was sentenced to four years' imprisonment on each count with the sentences to be served concurrently and further ordered to make restitution to Diamond Shamrock in the amount of $473,541. Mr. Bratton now appeals.

## II. DISCUSSION

### A. *Sufficiency of the Evidence*

■ On appeal, Mr. Bratton challenges the sufficiency of the evidence adduced at trial to support his conviction of aiding and abetting his wife in the commission of wire fraud and of possession of stolen property. The only element of the above two crimes which Mr. Bratton maintains that the Government failed to prove at trial, however, is his *knowledge* of the stolen character of the funds deposited into the DJ's account at SASA at the time he received the stolen funds and appropriated those funds to his personal use. In reviewing an insufficiency of the evidence claim in a criminal matter, this Court inquires " 'whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Santiesteban,* 833 F.2d 513, 516 (5th Cir. 1987) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed. 2d 560 (1979)). Further, this Court will accept all credibility choices, whether based on direct or circumstantial evidence, which tend to support the verdict of the jury. *United States v. Vergara,* 687 F.2d 57, 60 (5th Cir.1982). Applying the above deferential standard of review to the facts of the instant case, we conclude that the evidence presented by the Government at trial is sufficient to support the conviction of Mr. Bratton for the crimes with which he was charged.

As noted previously, Mr. Bratton directs the attention of this Court to what he perceives to be the absence of any direct evidence establishing his knowledge of the stolen character of the Diamond Shamrock funds at the time he appropriated those funds to his personal use in San Antonio. Specifically, Mr. Bratton asserts that he innocently believed the explanation of his wife that the transferred funds were part of an inheritance from her deceased grandmother in Japan. Mr. Bratton does acknowledge that he was suffering from financial difficulties at the time the Diamond Shamrock funds were illegally transferred to the DJ's account; nevertheless, as evidence of his lack of knowledge of the stolen character of the funds, Mr. Bratton notes that he did not in any manner secret his activities with the funds once they were transferred to the DJ's account.

In response, to establish Mr. Bratton's knowledge of the stolen character of the transferred funds, the Government relies on the circumstances surrounding the unauthorized transfers of funds. In particular, the Government points to the active control and management of the stolen funds exercised by Mr. Bratton after the transfer of the funds to the SASA account upon which Mr. Bratton was the sole authorized signator. In this regard, the Government maintains that Mr. Bratton primarily directed the transfer and disposition of the funds after they were placed in the DJ's account to the exclusion of Mrs. Bratton. Moreover, as evidence of Mr. Bratton's guilt, the Government notes that Mr. Bratton kept open the DJ's account at SASA following the first fraudulent transfer of Diamond Shamrock funds in July 1986 despite the fact that the business DJ's closed shortly after that transfer. Stressing the significance of the above act by Mr. Bratton, the Government maintains that the decision by Mr. Bratton to keep the DJ's account open after the initial fraudulent transfer was a calculated decision made solely for the purpose of facilitating the subsequent fraudulent transfer of funds in June 1987. Further, the Government mentions the financial difficulties suffered by Mr. Bratton at the time of the unauthorized transfers of funds as providing a motive for the participation of Mr. Bratton in the thefts. Finally, the Government notes that, while Mr. Bratton did not

secret his activities with the funds following their deposit in the DJ's account, Mr. Bratton curiously did not mention to any friends and family the large inheritance received from his wife's deceased grandmother in Japan. In this regard, the Government maintains that this lack of disclosure to others by Mr. Bratton regarding the inheritance supports a conclusion that the inheritance story was fabricated by the Brattons.

In addition to the circumstantial evidence presented at trial establishing Mr. Bratton's knowledge of the stolen character of the transferred funds, the Government notes the rebuttable inference which arises from the unexplained possession of stolen property by a defendant that such a defendant has knowledge of the stolen character of the property. *Barnes v. United States,* 412 U.S. 837, 843, 93 S.Ct. 2357, 2361, 37 L.Ed.2d 380 (1973). The Government insists that Mr. Bratton failed to rebut the above inference arising from his possession of the stolen funds that he possessed knowledge of the stolen character of those funds since the jury chose to disbelieve the story of Mr. Bratton and his wife that the funds were in actuality a portion of his wife's inheritance from her deceased grandmother in Japan.

Despite the seemingly overwhelming amount of circumstantial evidence offered by the Government supporting Mr. Bratton's guilt, it is observed that the circumstantial evidence of Mr. Bratton's guilt offered by the Government at trial is entirely consistent with the explanation of Mrs. Bratton that she informed her husband that the transferred funds were part of an inheritance from her deceased grandmother in Japan. In this regard, it is undisputed that Mrs. Bratton's grandmother did indeed pass away in Japan at the relevant time. The Government, however, cites the following evidence which tips the evidentiary scales in the instant case in favor of the Government. Specifically, the Government notes that, on June 6, 1987, Mr. Bratton called both SASA and Chemical Bank (E.F. Hutton's bank in New York) looking for the second transfer of funds ($223,541) *prior* to the deposit of those funds being made

in the DJ's account at SASA. Further, Mr. Bratton provided SASA with the missing numerals in the DJ's account number which enabled the fraudulent transfer of funds to be successfully completed. Significantly, the above actions of Mr. Bratton directly contradict the testimony of Mrs. Bratton that she did not inform Mr. Bratton about the second transfer of funds until *after* the funds were placed in the DJ's account at SASA. The above contradiction between Mrs. Bratton's testimony and the actions of Mr. Bratton during the relevant time period support an inference by the jury that Mr. Bratton did indeed have knowledge of the stolen character of the funds. Moreover, while not producing direct evidence of the receipt by Mr. Bratton of a copy of the advice of wire transfer from Chemical Bank to SASA regarding the illegal transfers of funds, the Government did present evidence to the jury that it was standard practice for SASA to mail a copy of the advice of wire transfer to its account holder upon completion of the transfer. Thus, in the regular course of business, Mr. Bratton should have received a copy of the advice of the unauthorized transfers from E.F. Hutton, New York, to SASA, San Antonio.

In sum, based on the circumstantial evidence of Mr. Bratton's guilt cited above, the rebuttable inference of Mr. Bratton's knowledge of the stolen character of the funds arising from his possession of those funds, as well as the contradiction between the testimony of Mrs. Bratton and the actions of Mr. Bratton regarding the second transfer of funds, we conclude that the evidence was sufficient to enable a rational trier of fact to conclude that Mr. Bratton possessed knowledge of the stolen character of the transferred funds. Accordingly, we reject the contention of Mr. Bratton in this regard.

B. *Admission of Impeachment Evidence*

Our inquiry in the instant appeal, however, is not complete as Mr. Bratton also challenges a decision by the district court to allow the Government to introduce

impeachment evidence during the cross-examination of Mrs. Bratton regarding past physical abuse by Mr. Bratton against his wife. As with the sufficiency of the evidence issue, the instant evidentiary challenge posed by Mr. Bratton is a close one. Nevertheless, the standard of review which this Court employs in assessing the decision of a district court to admit relevant, but potentially prejudicial, evidence is the deferential one of abuse of discretion. *United States v. Soudan*, 812 F.2d 920, 930 (5th Cir.1986), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987). Applying the above deferential standard of review, we cannot say that the district court abused its discretion in allowing the impeachment evidence regarding the past physical abuse by Mr. Bratton of his wife for the following reasons.

Addressing the issue of bias of a witness in *United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), the Supreme Court concluded that the Federal Rules of Evidence contemplate impeachment of a witness for bias as "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of the witness' testimony." *Abel*, 469 U.S. at 52, 105 S.Ct. at 469. In a similar vein, this Court has stated that "cross-examination into any motivation or incentive a witness may have for falsifying his testimony *must* be permitted." *United States v. Hall*, 653 F.2d 1002, 1008 (5th Cir.1981) (emphasis in original). Nevertheless, the introduction of such impeachment evidence, however relevant, is limited by the danger of unfair prejudice to the defendant. Pursuant to Fed.R.Evid. 403, a district court is charged with weighing the probative value of the evidence against its prejudical effect prior to allowing the use by the Government of such evidence at trial.

In the instant case, the Government elicited testimony from Mrs. Bratton on cross-examination regarding past physical abuse against her by Mr. Bratton in an effort to establish the motivation of Mrs. Bratton to falsify or fabricate her testimony due to her fear of further physical abuse at the hands of her husband. Mr. Bratton, however, maintains that such evidence of past physical abuse was unduly prejudicial in its effect on the jury and thus, was improperly admitted by the district court.

Despite the questionable judgment of the Government in introducing the evidence of past abuse at trial, we cannot say that the district court abused its discretion in allowing such evidence to be used by the Government for the purpose of impeaching Mrs. Bratton. The record reveals that the district court carefully limited the Government to the introduction of evidence of physical abuse against Mrs. Bratton occurring only after November 1987. Apparently, there allegedly existed other instances of physical abuse which the Government was not allowed to present to the jury. Further, prior to allowing the use of the impeachment evidence, the district court provided to the jury a limiting instruction to the effect that the jury could only consider the evidence in assessing the credibility of Mrs. Bratton. Finally, the evidence introduced at trial consisted of testimony that Mr. Bratton had previously physically abused his wife and threatened his wife with a gun. This conduct on the part of Mr. Bratton could easily have affected the content of Mrs. Bratton's testimony by inducing her to testify falsely out of fear of her husband. For all of the above reasons, we conclude that, on the facts of the instant case, the district court did not abuse its discretion in allowing the impeachment evidence regarding the past physical abuse by Mr. Bratton of his wife. We therefore affirm.

AFFIRMED.