**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael Curtis KEYS, Defendant–Appellant.**

No. 89–6104.

United States Court of Appeals, Tenth Circuit.

March 30, 1990.

Rand C. Eddy, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

Robert E. Mydans, U.S. Atty., (Teresa Black, Asst. U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before MOORE and TACHA, Circuit Judges, and KANE,* District Judge.

* The Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

TACHA, Circuit Judge.

Michael Curtis Keys appeals his conviction and sentence for knowingly possessing a weapon while an inmate of a federal correctional institution in violation of 18 U.S.C. section 1791(a)(2). Keys contends that the district court erred by: (1) failing to exclude evidence of his prison gang membership; (2) permitting the testimony of two government witnesses to be reread during jury deliberations; (3) adding two levels to his base offense level for obstruction of justice; and (4) departing upward from the Sentencing Guidelines due to his prison disciplinary record. We affirm.

## I.

Keys is a federal inmate currently serving twenty years for bank robbery. On July 8, 1988, Keys was notified that he would be transferred to another range of the cell block and that he should gather his belongings. Keys packed his belongings in a pillowcase. Fifteen or twenty minutes later, after all of the other inmates in the range had been locked down, an officer handcuffed Keys, let him out of his cell, and then handed him the pillowcase containing his personal belongings. Keys and two officers went downstairs to the lower range. Pursuant to institutional policy, the officers conducted a search of Keys' clothing and belongings. In the pillowcase the officers discovered a bundle of envelopes, including one which was sealed. When questioned about the envelope, Keys said it contained his toothpowder. The officer opened the envelope and found a "shank" —a razor blade melted into a toothbrush handle to form a knife.

Following this incident, Keys was involved in several altercations with prison officials. In December 1988, in an incident with officer Jim Eisenhour, Keys stated that he was a Crips member with sixty soldiers in the prison system who would do favors for him; that Eisenhour was a dead man; and that Keys would spread the word to his Crips brothers to kill Eisenhour. Officer Bob Logsdon was present and heard Keys make these statements to Eisenhour. On January 6, 1989, Keys attempted to assault the warden and assistant warden, requiring eight officers to subdue him. Prison authorities also intercepted a letter from Keys to another inmate, Johnny Molina. The letter implicitly invited Molina to perjure himself by describing, in precise detail, Eisenhour's alleged threats and abuse of Keys and asking Molina and two other inmates to testify to these alleged events.

At trial, the jury found Keys guilty of possessing the knife, rejecting Keys' defense that the knife had been placed in his possession without his knowledge. The district court, after reviewing the presentence report and hearing the arguments of both sides, enhanced Keys' base offense level by two levels for obstruction of justice, finding that Keys had testified untruthfully at trial. The district court also departed upwards from the Guidelines, finding that Keys' criminal history category underrepresented the seriousness of his past conduct because the Guidelines calculation did not include Keys' assaultive conduct while in prison. The district court sentenced Keys to fifty months imprisonment followed by three years of supervised release.

## II.

The first issue on appeal is the propriety of the district court's decision to admit Keys' statements about gang membership into evidence. We review the district court's decision for abuse of discretion. *See United States v. Alexander*, 849 F.2d 1293, 1301 (10th Cir.1988).

The manner in which the case against Keys developed at trial is crucial to understanding why the district court admitted Keys' statements concerning gang membership. The government sought to show that Keys was in knowing possession of the knife because he packed the envelope containing the knife into the pillowcase containing his personal belongings. Keys' defense was that his possession was not "knowing" because someone else had placed the knife in the toothpowder envelope and left the envelope on Keys' side of the cell. Keys argued that when the

range orderly, an inmate named Steve Kinnison, went back to the cell to retrieve some items that Keys had left behind, Keys' cellmate, Kelly Ward, gathered up everything on Keys' side of the cell and gave the envelope, among other items, to Kinnison. Kinnison then gave the items to Keys, who placed them in his pillowcase.

On cross examination, the government asked Keys about his statements during the altercation with officer Eisenhour that he was a member of a prison gang and had sixty soldiers who would do him favors, including breaking the law.[1] Keys denied making the statements. The government also asked Kinnison and Ward if they were gang members. Both Kinnison and Ward denied that they were gang members.

In rebuttal, the government called officers Eisenhour and Logsdon to testify that Keys had made the statement about gang membership and having sixty soldiers who would do him favors, including breaking the law. The district judge permitted this testimony over objection, but instructed the jury that:

> Ladies and Gentlemen, in regard to [officer Eisenhour's] testimony, it is only being admitted—[Keys is] not on trial for being a member of a gang. As you know, he's on trial in regard to possession of a weapon. But, this testimony is admitted only so far as you may consider it relevant as to the credibility of other witnesses that have testified in the case.

On appeal, the government contends that admission of Keys' statement about gang membership was probative of bias by the inmate witnesses in Keys' favor. Keys objected on the grounds that the information was irrelevant and unfairly prejudicial.

## A. Bias Due to Common Membership in a Group

■ *United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), dis-

cusses the admissibility of gang membership to show the bias of a witness. In *Abel*, the government sought to prove the bias of a defense witness through cross-examination and extrinsic evidence showing that the defendant and the defense witness were members of the same prison gang, and that the tenets of the gang required members to "lie, cheat, steal, [and] kill" to protect each other. *Id.* at 48, 105 S.Ct. at 467. The Court held that "[a] witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias." *Id.* at 52, 105 S.Ct. at 469. The Court also rejected the argument that the district court should cut off the description of the type of gang because evidence of the gang's tenets was unfairly prejudicial. The Court observed:

> This argument ignores the fact that the *type* of organization in which a witness and a party share membership may be relevant to show bias.... The attributes of the Aryan Brotherhood—a secret prison sect sworn to perjury and self-protection—bore directly not only on the *fact* of bias but also on the *source* and *strength* of Mill's bias.

*Id.* at 54, 105 S.Ct. at 470 (emphasis in original). The Court noted that the defendant had not been unfairly prejudiced where the district court had prevented the use of the term "Aryan Brotherhood" and had given a cautionary instruction. *See id.* at 54–55, 105 S.Ct. at 470–71. The Court thus held that the district court had not abused its discretion in permitting the testimony about gang membership.

Although *Abel* permits the introduction of evidence of gang membership to show bias, the government must first lay a foundation showing that the defendant and the witness to be impeached belong to the same gang.[2] In this case, however, the

---

1. Before cross-examination, the government had agreed at a bench conference to refrain from mentioning the Crips by name or referring to Keys' threats to have Eisenhour murdered. Keys' counsel objected to introduction of Keys' claim of control over other inmates, but the district court overruled the objection.

2. In making this showing, the government may rely upon extrinsic evidence:

> Bias is never classified as a collateral matter which lies beyond the scope of inquiry, nor as a matter on which an examiner is required to take a witness's answer. Bias may be proved

government's extrinsic evidence only showed that Keys was a member of a gang. Defense witnesses Kinnison and Ward on cross-examination denied being gang members, and, unlike the situation in *Abel*, the government did not have extrinsic evidence to contradict their denials. There is thus no evidence in the record showing that Kinnison and Ward were members of the same gang as Keys. Absent such a foundation, Keys' statements concerning gang membership are not probative of bias on the part of Kinnison and Ward due to common membership in a gang.

### B. *Bias Due to Fear*

■ Although Keys' statement is not admissible to show that Kinnison and Ward were biased in Keys' favor because they belonged to the same gang, the district court did not abuse its discretion by admitting the evidence to show bias. Keys' statement that he controlled sixty soldiers in the prison system who would do him favors, including breaking the law, is relevant to show that Kinnison's and Ward's testimony might have been influenced by their fear of Keys and his gang. In *United States v. Bratton*, 875 F.2d 439, 442–43 (5th Cir.1989), the Fifth Circuit upheld the trial court's admission of evidence of the defendant-husband's physical abuse of his wife in an effort to establish her motivation to "falsify or fabricate testimony due to her fear of further physical abuse at the hands of her husband." *Id.* at 443; *see also Abel*, 469 U.S. at 52, 105 S.Ct. at 469 ("Bias may be induced by a witness' like, dislike, or *fear of a party....*"). Although it considered the government's judgment in introducing the evidence "questionable," the Fifth Circuit found that the district court had not abused its discretion where it had carefully limited the evidence admitted and had given a limiting instruction. *See Bratton*, 875 F.2d at 443.

We find the Fifth Circuit's rationale persuasive. We have permitted testimony and

by extrinsic evidence even after a witness's disavowal of partiality.

questions about an inmate's prison experience in the past, noting that an inmate's testimony may be tempered by an understanding that "those who cooperate with the Government might be killed." *See United States v. Greschner*, 802 F.2d 373, 382–83 (10th Cir.1986), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987). Keys' statement that he controlled sixty soldiers in the prison system who would do him favors, including breaking the law, suggests that Kinnison and Ward might fabricate or slant their testimony due to fear of Keys and his "soldiers." As the Supreme Court has observed:

> Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

*Abel*, 469 U.S. at 52, 105 S.Ct. at 469. We find that the district court did not abuse its discretion in permitting these facts to reach the jury, especially where Keys himself claimed a leadership or controlling role over the "soldiers."

### C. *Rule 403 Balancing*

■ Keys contends that the district court should have excluded his statements concerning gang membership as unfairly prejudicial evidence. We disagree. The decision whether to exclude evidence as unfairly prejudicial under Rule 403 "is one for which the trial judge, because of his familiarity with the full array of evidence in the case, is particularly suited." *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 839 (10th Cir.1988) (quoting *Rigby v. Beech Aircraft Co.*, 548 F.2d 288, 293 (10th Cir.1977)), *cert. denied*, — U.S. —, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). We will not disturb the trial judge's ruling absent a "clear abuse of discretion." *Id.*

Credibility was crucial to resolution of this case. If the jury believed the Government's witnesses, Keys affirmatively packed the knife in his pillowcase, which suggests that he knowingly possessed the

*United States v. Anderson*, 881 F.2d 1128, 1139 (D.C.Cir.1989) (quoting *United States v. Robinson*, 530 F.2d 1076, 1079 (D.C.Cir.1976)).

knife. If the jury believed the defense witnesses, the knife could have been inside the envelope without Keys' knowledge, possibly raising a reasonable doubt as to whether Keys' possession of the knife was "knowing." In this context, evidence that the defense witnesses might have slanted their testimony because of their fear of Keys and his fellow gang members had a high probative value. Moreover, the district court took several precautionary measures which substantially reduced the danger of unfair prejudice. The court excluded mention of the gang's name and Keys' threat to have officer Eisenhour murdered and gave a limiting instruction that the jury should only consider Keys' statement for the purpose of evaluating the credibility of the other witnesses. We therefore hold that the district court did not abuse its discretion in refusing to exclude Keys' statements concerning gang membership under Rule 403.

### III.

■ The second issue on appeal is whether the district court erred in permitting the testimony of two government witnesses to be read to the jury after deliberations commenced. Keys contends that the district court's action "unduly emphasized" the testimony. We disagree.

We review for abuse of discretion. *See United States v. Brunetti*, 615 F.2d 899, 903 (10th Cir.1980); *United States v. Tager*, 481 F.2d 97, 101 (10th Cir.1973), *cert. denied*, 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974). Although rereading of testimony after deliberations have commenced is "disfavored," *see United States v. Nolan*, 700 F.2d 479, 486 (9th Cir.), *cert. denied*, 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983), we have found no abuse of discretion where the testimony was read in its entirety, *see Brunetti*, 615 F.2d at 903; *Tager*, 481 F.2d at 101. In this case the district court first instructed the jury to use their collective memories and told the jury that rereading would be allowed only if the testimony could not be recalled and was "absolutely essential" to their verdict. The jury indicated that they

considered the testimony essential. The district court then permitted the entire testimony of the two witnesses to be read to the jury. We find no abuse of discretion under these circumstances.

### ·IV.

The third issue presented on appeal concerns the propriety of enhancing Keys' sentence under the Sentencing Guidelines for obstruction of justice, U.S.S.G. § 3C1.1. Keys contends that the district court impermissibly penalized him for exercising his right to defend himself. We disagree.

■ The government bears the burden of proof for increases in sentence. *See United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir.1990); *accord United States v. McDowell*, 888 F.2d 285, 290–91 (3d Cir. 1989). "Evidence which does not preponderate or is in equipoise simply fails to meet the required burden of proof." *Kirk*, at 1164. The district court's application of the Guidelines to the facts is entitled to due deference, and a finding of fact will be upheld unless clearly erroneous. *See* 18 U.S.C. § 3742(e).

Guidelines section 3C1.1 provides:

If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. Keys contends that presenting his theory of defense and denying guilt should not subject him to the possibility of an increase in punishment for perjurious testimony. We agree that a denial of guilt or exercise of the constitutional right to testify in one's own defense is not a proper basis for application of Guidelines section 3C1.1. *See id.* § 3C1.1, comment. (n. 3). The giving or subornation of perjurious testimony, however, is not the exercise of a constitutional right. As the Supreme Court observed in *United States v. Grayson*, 438 U.S. 41, 54, 98 S.Ct. 2610, 2617, 57 L.Ed.2d 582 (1978), "[t]here is no protected right to commit perjury."

■ The government at Keys' sentencing hearing presented to the district court detailed allegations of perjury by Keys. The court also considered Keys' objections to enhancing his sentence under Guidelines section 3C1.1. The court specifically stated his own observation that the defendant had not testified truthfully. In addition, the court had before it the letter from Keys to Molina, detailing the alleged events that Keys wished Molina to testify to in order to discredit officer Eisenhour. Based on this record, we cannot say that the district court's finding that Keys willfully obstructed the administration of justice was clearly erroneous.

## V.

The fourth issue on appeal is whether the district court erred in departing upward from the guidelines. The district court departed upward because it determined that the Guidelines did not address adequately the seriousness of Keys' past criminal conduct, particularly his prison disciplinary record.

Our review of departures is controlled by *United States v. White,* 893 F.2d 276 (10th Cir.1990), which established a three step procedure for review of the district court's decision to depart:

> In the first step, we determine whether the circumstances cited by the district court justify a departure from the Guidelines. The sentencing court may depart from the Guidelines only if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described...." Our standard of review in the first step is plenary.

*Id.* at 277–78.

■ The district court relied on Keys' prison disciplinary record, which showed several instances of assaultive behavior, as the circumstance justifying departure. We examine Guidelines sections 4A1.1 through 4A1.3 to determine whether the Sentencing Commission adequately considered a defendant's prison disciplinary record in its provisions for calculating a defendant's criminal history. *See id.* Guidelines sections 4A1.1 through 4A1.3 explicitly provide for various types of prior sentences, *see, e.g.,* U.S.S.G. §§ 4A1.1, 4A1.2 (prior judicial sentences); *id.* § 4A1.2(d) (juvenile sentences); *id.* § 4A1.2(f) (diversionary dispositions); *id.* § 4A1.2(g) (military sentences); *id.* § 4A1.2(h) (foreign sentences); *id.* § 4A1.2(i) (tribal court sentences); *id.* § 4A1.2(k) (revocations of probation, parole, mandatory release, or supervised release); *see also id.* § 4A1.2, comment. (nn. 1, 7, 9, 11), but do not mention prison disciplinary tribunal sanctions. Guidelines section 4A1.3, however, does state that:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct ... the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning:
>
> . . . .
>
> (c) prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;
>
> . . . .
>
> (e) prior similar adult criminal conduct not resulting in a criminal conviction.

*Id.* § 4A1.3, p.s. We hold that a prison disciplinary record may, in appropriate situations, be a proper basis for an upward departure "when the criminal history category *significantly* underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes," *id.* (emphasis added).

■ Keys also objects to the district court's consideration of his prison disciplinary record on the grounds that the district court may not use "unrelated" conduct as a basis for departing from the Guidelines. This contention is meritless. Guidelines section 1B1.4 specifically states:

> In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warrant-

ed, the court may consider, *without limitation, any information concerning the background, character and conduct of the defendant*, unless otherwise prohibited by law. *See* 18 U.S.C. § 3661. *Id.* § 1B1.4 (emphasis added). In our view, the Guidelines clearly permit the district court to consider information concerning Keys' prison disciplinary record that is unrelated to the actual offense of conviction.

 Keys further contends that Guidelines section 2P1.2, which determines the sentence for providing or possessing contraband in prison, implicitly considered the possibility that the defendant might have a prison disciplinary record, therefore the district court should be barred from departing on that basis. We disagree.

Guidelines section 2P1.2 applies generally to visitors and prison officials, not just to prison inmates. This general applicability of Guidelines section 2P1.2 forecloses Keys' argument because either visitors or prison officials would rarely, if ever, have prison disciplinary records.

Furthermore, Keys' argument misunderstands the structure of the Guidelines. The mere fact that a factor is mentioned for one offense does not mean that it cannot be applied to other offenses.

[A] factor may be listed as a specific offense characteristic under one guideline but not all guidelines. Simply because it was not listed does not mean that there may not be circumstances when the factor would be relevant to sentencing. For example, the use of a weapon has been listed as a specific offense characteristic under many guidelines, but not under immigration violations. Therefore, if a weapon is a relevant factor to sentencing for an immigration violation, the court may depart for this reason.

*Id.* § 5K2.0, p.s. Thus, the absence of explicit mention of a factor does not mean that it was implicitly considered and included in the Guidelines provision. Instead, the presence of that factor may be grounds for departure. Section 2P1.2's general applicability and the structure of the Guidelines preclude Keys' contention that the Sentencing Commission implicitly considered prison disciplinary records in establishing Guidelines section 2P1.2.

We hold that the Sentencing Commission did not adequately consider a defendant's possible prison disciplinary record when it formulated Guidelines sections 4A1.1 through 4A1.3 and 2P1.2. The district court thus did not err under the first step of the *White* analysis when it decided to depart upward from the Guidelines because of Keys' prison disciplinary record. *See White*, at 277–78.

In the second step of the *White* analysis, we determine whether the circumstances cited by the district court to justify departure actually exist in the instant case. The findings of the district court will be overturned only if clearly erroneous. *Id.* at 277. Keys did not dispute the accuracy of his prison disciplinary record. There being no dispute as to the existence of the circumstances forming the basis for the district court's departure, we turn to step three.

The third step in our inquiry is a review of the reasonableness of the district court's degree of departure from the Guidelines. Even if the district court's decision to depart from the Guidelines is valid, we will still vacate the sentence if the degree of departure is unreasonable. *See White*, at 278; 18 U.S.C. § 3742(e)(3). In determining whether the degree of departure is reasonable, we consider the district court's proffered justifications as well as such factors as: the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the policy statements and sentencing pattern of the Guidelines, and the need to avoid unwarranted sentencing disparities. *See White*, at 278; 18 U.S.C. §§ 3553(a), 3742(e)(3).

Guidelines section 4A1.3 gives specific direction to the district court concerning the appropriate degree of departure where the defendant's criminal history score underrepresents past criminal conduct or the likelihood that the defendant will commit other crimes:

In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable.

U.S.S.G. § 4A1.3 p.s. We thus turn to the district court's calculation of the degree of departure.

█ The district court determined that Keys' base offense level was 13, *id.* § 2P1.2, and added 2 levels for obstruction of justice, *id.* § 3C1.1, for a total offense level of 15. The court then determined that Keys' criminal history score was seven points, plus three points because he committed the offense while incarcerated. *Id.* §§ 4A1.1(d), 4A1.1(e). Ten criminal history points places Keys in criminal history category V, *id.* Ch. 5, Part A, for a presumptive sentence of 37–46 months. The Guidelines state that where the criminal history category does not adequately reflect the seriousness of the defendant's criminal past, then departure is appropriate, *id.* § 4A1.3 p.s., and the district court should depart to the next highest criminal history category, in this case category VI, *id.* The presumptive sentence for an offense level 15 with criminal history category VI is 41–51 months. *Id.* Ch. 5, Part A. The district court sentenced Keys to fifty months, which is within the suggested departure range. Because we agree with the district court that Keys' prison disciplinary record shows a criminal history greater than that indicated by his criminal history category and because the court departed in the manner suggested by the Guidelines, we hold that the district court did not depart unreasonably from the Guidelines.

## VI.

The judgment of the district court is AFFIRMED.