**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Lisa Rosemary THORNTON, also known
as Lisa Rosemary Austin, also known
as Lisa Rosemary Sparger, also known
as Lisa Rosemary Walker, Defendant–
Appellant.**

No. 89–6415.

United States Court of Appeals,
Tenth Circuit.

Jan. 8, 1991.

Susan M. Otto, Asst. Federal Public Defender, Oklahoma City, Oklahoma, for defendant-appellant.

Leslie M. Kaestner, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with her on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before McKAY, SEYMOUR and BRORBY, Circuit Judges.

SEYMOUR, Circuit Judge.

Appellant Lisa Rosemary Thornton appeals her sentence for a conviction of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 (1988). On appeal, Thornton alleges that the district court's departure from the applicable guideline provisions resulted in an unwarranted and unreasonable sentence under the Sentencing Reform Act. We vacate the sentence and remand for resentencing.

## I.

On August 16, 1989, the Midwest City Police Department raided the home of Rosemary Thornton, seizing .8 grams of methamphetamine, .7 grams of amphetamine, and drug paraphernalia. Thornton's fifteen year old daughter and John Easterling also resided at the home. Thornton, her daughter, and Easterling were subsequently arrested.[1]

Thornton was indicted on six counts of drug and firearms violations. Count one of the indictment charged Thornton with conspiring with John Easterling to distribute methamphetamine from July 15, 1989 to on or about August 16, 1989 in violation of 21 U.S.C. § 846. The remaining counts related to the unlawful possession of various firearms. Thornton pled guilty to count one of the indictment, specifically admitting to possession of .7 grams of amphetamine and .8 grams of methamphetamine with the purpose of selling such drugs.

> "In [my] house, I had .7 grams of amphetamine and .8 grams of methamphetamine. I got the methamphetamine from John Easterling. I had the methamphetamine for purposes of selling it. I did this knowingly, understanding it was against the law."

Rec., vol. I, doc. 53 at 7, ¶ 45.[2] These acts formed the factual basis of Thornton's conviction and sentencing. The remaining counts against Thornton ultimately were dismissed.

In sentencing Thornton, the district court adopted the findings of the presentence report (PSR). It stated that Thornton had resided with Easterling for approximately eighteen months out of the last two years. It also reported that, according to a Bureau of Alcohol, Tobacco and Firearms (ATF) investigation, Thornton had been selling and distributing drugs she received from Easterling. Rec., vol. III, at 3 ¶ 7. Based on this conduct and the pending charge under section 846, the PSR computed a total offense level of twelve for Thornton for the conduct of conspiring to possess a controlled substance with the intent to distribute.

Section 2D1.4, United States Sentencing Commission Guidelines Manual, 1990 (hereinafter Guidelines), states that the offense

---

1. Thornton's daughter was not indicted on criminal charges. Easterling was indicted on one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 (1988) and five firearms-related counts. Easterling pled guilty to the conspiracy count and one count of possession of firearm during commission of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (1988). *See United States v. Easterling,* 921 F.2d 1073 (10th Cir.1990).

2. This admission was similar to the one made by Easterling, Thornton's co-conspirator, concerning the conspiracy. In his signed plea agreement, Easterling stated, "the Government's evidence would show that the defendant was involved in the distribution of .8 grams of methamphetamine and .7 grams of amphetamine." Rec., vol. I, doc. 54 at 1.

level for a conspiracy offense involving a controlled substance shall be the same as if the object of the conspiracy had been completed. The PSR identified the .8 grams of methamphetamine and .7 grams of amphetamine seized during the raid as the object of the conspiracy. According to the PSR, a conspiracy to distribute that amount of drugs established a base offense level of twelve. The PSR added two specific offense points pursuant to Guidelines § 2D1.1(b)(1) for possession of firearms. However, two points were deducted for acceptance of responsibility pursuant to Guidelines § 3E1.1(a), leaving the total offense level at twelve.

The PSR established that Thornton had a total of three criminal history points, placing her in criminal history category II. The PSR assessed one point for her prior convictions of possessing a controlled substance with intent to distribute and a related firearm charge. It also assessed two additional points because Thornton committed the instant offense while on probation for those crimes. An offense level of twelve and criminal history category of II placed Thornton in the guideline imprisonment range of twelve to eighteen months pursuant to Guidelines § 5.2.

■ The PSR stated that "the making of drugs available to [Thornton's] juvenile daughter by [Thornton]" was a factor that might warrant upward departure in Thornton's case. Rec., vol. III, at 9 ¶ 50. The PSR was referring to the fact reported under the heading of "Offense Conduct" that "Lisa Thornton's juvenile daughter also advised the ATF agent that John Easterling and her mother had given her drugs for personal consumption on numerous occasions." *Id.* at 3 ¶ 7. The PSR did not recommend an appropriate degree of departure. At the sentencing hearing, Thornton conceded that she had given her daughter

small quantities of marijuana and amphetamines.[3] The court agreed with the PSR recommendation that an upward departure was appropriate, finding that because Thornton had distributed drugs to her minor child, "the guidelines that are established for ... this offense do not adequately reflect the seriousness of the conduct with which you were involved, whatever the explanation." Rec., vol. II, at 17.

The court indicated at the sentencing hearing that it intended to make an *offense level* departure from the applicable guideline offense level on the basis of Thornton's distribution of drugs to her daughter. After some discussion over the proper section to which the court should refer for guidance, defense counsel suggested that Guidelines § 2D1.2 (effective Jan. 15, 1988) should guide the court's offense level departure. Under section 2D1.2, which has a minimum base offense level of thirteen,[4] the court applies the trafficking provisions of 2D1.1 but triples the amount of drugs involved for sentencing purposes if those drugs were distributed to a minor. The trial judge here, however, found that this guideline did not provide an adequate analogy for guiding the departure:

> "[2D1.2] does not, however, take into consideration the factor of sales or conveying drugs to your *own* child.
>
> "I'm just satisfied that the guidelines do not include that, doesn't contemplate that and do not factor that in.
>
> "I think that is a seriously exacerbating circumstance in this case. And I use that as a ground for departure.
>
> "I just don't think the guidelines in this case are adequate for the gravity of the offense."

Rec., vol. II, at 20 (emphasis added). Having found no adequate guide for the offense level departure, the court sentenced

---

**3.** There is no evidence in the record regarding the quantity of drugs given to the daughter, nor was there evidence or argument that those distributions arose out of the same "course of conduct or common scheme or plan" as the one-month conspiracy to sell drugs. If there had been such evidence, the quantity of drugs and their distribution to a minor could have been used to increase the base offense level under Guidelines § 1B1.3(a)(2) and § 2D1.2.

**4.** At sentencing and at oral argument, Thornton conceded that the base level offense of thirteen should apply. This is the minimum sentence established for distribution to children under the age of fifteen. It appears undisputed that Thornton's daughter was fourteen when the distributions were made.

Thornton to a sixty-month prison term without further explanation.

## II.

■ The three-part analysis set out in *United States v. White*, 893 F.2d 276, 277–79 (10th Cir.1990), guides our review of the validity of upward departures. According to *White*, we review upward departures by determining: (1) whether the district court correctly identified factual circumstances warranting departure; (2) whether such circumstances actually exist; and (3) whether the degree of departure is reasonable. *Id.* at 278. Thornton does not dispute the district court's factual conclusion that she provided drugs to her minor child. Therefore, we need only address whether this circumstance warranted upward departure and whether the degree of departure was reasonable. We hold that although the district court identified a circumstance that could provide the basis for an upward departure, it erred in determining the degree of departure by incorrectly referring to an offense level rather than to a criminal history category.

■ We review *de novo* whether the district court justified its departure by citing appropriate circumstances. *White*, 893 F.2d at 278 (citing 18 U.S.C. § 3553(b) (1988)). If the district court "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," then it may depart from the Guidelines. *Id.* at 277–78 (quoting 18 U.S.C. § 3553(b)). Information concerning "prior similar adult criminal conduct not resulting in a criminal conviction," may provide the basis for an upward departure from the applicable sentencing range. Guidelines § 4A1.3(e). Such conduct provides the basis for an upward departure from the defendant's calculated *criminal history* category. *See id.; United States v. Keys*, 899 F.2d 983, 990–91 (10th Cir. 1990). Departure is permissible because in such a case "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct." Guidelines § 4A1.3.

■ The Guidelines give specific instructions as to how a defendant's prior criminal history should be used as a basis for departing from the applicable guidelines range.

"A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes....

"....

"In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable. For example, if the court concludes that the defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history, and that the seriousness of the defendant's criminal history most closely resembles that of most defendants with a Category IV criminal history, the court should look to the guideline range specified for a defendant with a Category IV criminal history to guide its departure."

Guidelines § 4A1.3. In this circuit, the sentencing judge follows this procedure by departing to a higher criminal history category when a criminal history category does not adequately reflect the seriousness of defendant's past conduct. *See generally United States v. Jackson*, 921 F.2d 985 (10th Cir.1990) (en banc); *see also United States v. Gardner*, 905 F.2d 1432, 1436–39 (10th Cir.1990); *Keys*, 899 F.2d at 989; *White*, 893 F.2d at 279; *see also United States v. Harris*, 907 F.2d 121, 124 (10th Cir.1990) (upward departure from applicable criminal history category reversed because the district court failed to make any comparisons to higher criminal history categories). In *Keys*, the district court departed from the applicable guideline range on the basis of defendant's prison disciplinary record. Because the guidelines did not address the seriousness of the defendant's past conduct, for which there were no convictions, we held the district court properly departed to the next criminal history cate-

gory in sentencing the defendant. *Keys,* 899 F.2d at 990–91.

▐ Prior criminal conduct reflecting on the adequacy of defendant's criminal history category does not provide the basis for an *offense level* departure. Factors considered in departing from applicable criminal history categories are distinct from those used in departing from appropriate offense levels. *United States v. Fortenbury,* 917 F.2d 477, 479 (10th Cir. 1990); *see also United States v. Russell,* 905 F.2d 1450, 1456 (10th Cir.) (quoting *United States v. Roberson,* 872 F.2d 597, 607–08 (5th Cir.1989)), *cert. denied,* —— U.S. ——, 111 S.Ct. 267, 112 L.Ed.2d 224 (1990); *United States v. Bernhardt,* 905 F.2d 343, 345–46 (10th Cir.1990). Offense level departures must be based on a circumstance that is "substantially in excess of that which is *ordinarily involved in the offense of the conviction.*" Guidelines § 5K2.0 (emphasis added). Extraordinary aspects *of the offense for which the defendant was convicted* are typically the "aggravating factors" that provide the basis for an upward departure. *See, e.g., Fortenbury,* 917 F.2d at 479; *United States v. Baker,* 914 F.2d 208 (10th Cir.1990) (aggravating factors of use of dynamite and abduction of storeowner during the commission of crime merited upward departure to higher offense level); *United States v. Schular,* 907 F.2d 294, 298 (2d Cir.1990) (fact that defendant knew illegally procured firearms were to be used for an illicit purpose warranted upward departure to higher offense level).

▐ As in *Keys,* the district court in this case could have properly departed to a higher criminal history category because the Guidelines do not reflect the seriousness of Thornton's prior conduct. Thus we

do not overrule the district court's conclusion that Thornton's distribution of drugs to her minor child constitutes an aggravating circumstance not adequately taken into account when the Guidelines were formulated.[5] While the district court correctly determined that the act of giving drugs to one's minor child may justify an upward departure, we hold that the district court erred in determining the degree of upward departure because it ignored the distinction between offense level and criminal history category departures.

Thornton's prior uncharged criminal conduct reflects on the adequacy of her criminal history category, not the base offense level. The act to which Thornton pled guilty was a conspiracy to distribute .7 grams of amphetamine and .8 grams of methamphetamine during a one-month conspiracy from July 15 to August 16, 1989. As indicated by her statement to the court, *see supra* at 1491, the object of the conspiracy was to *sell* the drugs. *See also* rec., vol. I, doc. 53 at 7 (plea agreement). There is no evidence in the record to establish that Thornton gave drugs to her daughter during the time frame of the conspiracy charged in Count one, and in any event the prior acts of *giving* small quantities of drugs to her child were not part of the crime of conspiracy to sell drugs for which Thornton was charged and convicted. Thornton's act of giving drugs to her daughter was therefore not an "extraordinary aspect of the offense for which [she] was charged," *Fortenbury,* 917 F.2d at 479. The judge therefore incorrectly calculated the degree of upward departure by departing from the Guidelines offense level rather than the criminal history category.

5. On appeal, the Government also contends Thornton's testimony that she intended to continue living with Easterling, her co-conspirator, justified the decision to depart and the degree of departure. We find no evidence in the record that the trial judge actually sentenced Thornton on that basis. *See* rec., vol. II, at 17–20. Furthermore, we disagree with the Government that such a factor could be the basis for criminal sentencing. First, the court cannot sentence on the basis of mere intention or "bad thoughts." Moreover, the Guidelines prohibit sentencing decisions made on the basis of a defendant's lifestyle choices. *See* 28 U.S.C. § 994(e) (1988) (Congressional mandate that Guidelines "reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant."); Guidelines § 5H1.1–5H1.10; *United States v. Burch,* 873 F.2d 765, 768 (5th Cir.1989) (defendant's education, sophistication, and criminal past did not justify departure from Guidelines).

In consideration of the foregoing, we VACATE the sentence and REMAND for resentencing not inconsistent with this opinion.