OPINION OF THE COURT

SLOVITER, Circuit Judge.
Angel Gonzalez appeals from the District Court’s judgment and conviction or *391 der. Gonzalez was sentenced to an imprisonment term of 120 months following his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Gonzalez argues that he was denied a fair trial because the judge permitted the Government to suggest to the jury, through the cross-examination of a defense witness, that Gonzalez was part of a gang.
I.

Background Facts

On October 15, 2001, Officers John Krivulka and Joseph Leighthardt were on duty in Philadelphia’s 26th Police District when they received a call of a burglary in progress at 218 West Sergeant Street. Upon arriving at the scene in their marked patrol car, Officer Krivulka observed Gonzalez exiting the driver’s side of a car that was parked partially on the street and partially on the sidewalk. Gonzalez then walked over to Miguel Molina, who was seated on the front steps of 218 West Sergeant Street.
Officer Krivulka parked the patrol car and walked over to Gonzalez and Molina. As Officer Krivulka passed the car from which Gonzalez exited, he looked inside and saw a handgun on the front seat. Officer Leighthardt was already speaking with both Molina and Gonzalez when Officer Krivulka came up behind him and told him there was a weapon in the car from which Gonzalez had exited. Officer Leighthardt then told Gonzalez to turn around and put his hands behind his back. Gonzalez shoved Officer Leighthardt and fled, but was apprehended after a brief foot chase.
The handgun found in the car was a loaded Lorcin model with an obliterated serial number. The parties stipulated at trial that Gonzalez had previously been convicted of a crime punishable by imprisonment of a term exceeding one year. The jury subsequently found Gonzalez guilty of one count of possession of a firearm by a convicted felon.

Trial

Gonzalez’s appeal is limited to his challenge to the questions that the Assistant U.S. Attorney posed to Molina, who was a defense witness at Gonzalez’s trial. The District Court held a hearing outside the presence of the jury to determine the permissible scope of Molina’s testimony. The court stated that absent an offer of proof, it could not say in the abstract whether gang affiliation questions would be relevant on cross-examination. The Government sought to question Molina about his prior convictions and his numerous tattoos, particularly the one on his arm reading “fuck the law,” in order to establish Molina’s general attitude toward the law, his lack of credibility, and the possibility that the tattoos reflected gang membership. It reasoned that if Molina and Gonzalez were members of the same gang, it might suggest Molina had motive to skew his testimony so as to materially benefit Gonzalez’s defense.
During cross-examination, the prosecution asked Molina to describe his derogatory tattoo to the jury. It then asked Molina if any of his tattoos associated him with a particular gang, if he was a member of a gang, and if he knew any of the persons the prosecutor had named. As the prosecutor explained to the court, she suspected those persons were members of a gang. When Molina answered in the negative, the prosecutor moved on.
The objection by Gonzalez to this line of questioning was overruled. Out of the presence of the jury the District Court ruled that based on the offer of proof, the Government was entitled to “ask about the *392 relationship between the defendant and the witness, if any,” App. at 104a, but stopped short of allowing a separate line of questions about gangs or stopping the trial for a physical examination of tattoos. The court stated:
We’re not going to get into a separate trajectory about gangs, who belongs to what gangs and things like that. And I wouldn’t be inclined to interrupt the trial for physical examinations of anybody, but I think Mr. Molina can be asked about tattoos that are on his body.... That would tend to show his motive or his bias, I mean that’s why they’re relevant. I mean if he has a tattoo on his body which is derogatory to the law, I think that’s relevant to come out on cross-examination.... It goes to his motive and bias. I think it’s proper. But that to [me] sounds like that will be the extent of it.
App. at 103a-04a.
II.

Discussion

We review district court decisions regarding the admissibility of evidence for abuse of discretion. United States v. Saada, 212 F.3d 210, 220 (3d Cir.2000). “[T]he proper bounds of cross-examination are within the sound discretion of the trial court and, absent a showing of abuse, the exercise of that discretion will not be reversed by an appellate court.” United States v. Stevens, 935 F.2d 1380, 1393 n. 17 (3d Cir.1991) (quoting Lewis v. Rego Co., 757 F.2d 66, 73 (3d Cir.1985)).
The United States Supreme Court has stated that generally, “[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness’ testimony.” United States v. Abel, 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Here, the District Court held that the evidence elicited could go to establishing motive and bias of the defense witness.
Gonzalez argues that the District Court improperly allowed the Government to pose gang affiliation questions to Molina because the Government had failed to lay a proper foundation for those questions. He urges this court to adopt the holding of the Court of Appeals for the Tenth Circuit that “[a]lthough Abel permits the introduction of evidence of gang membership to show bias, the government must first lay a foundation showing that the defendant and the witness to be impeached belong to the same gang.” United States v. Keys, 899 F.2d 983, 986 (10th Cir.1990). The Government concedes that this rule of law is correct, but argues that “there is no bar to laying that foundation through the defense witness’ testimony” and that because “the prosecutor tried but failed to lay a foundation [through testimony], ... no evidence of gang membership was admitted.” Appellee’s Br. at 26-27.
While it may have been more prudent for the District Court to require the Government to proffer evidence in its possession linking Molina and Gonzalez to the same gang before it questioned Molina, the Government did have a good faith basis, founded on information from a police detective, for seeking to establish a gang-related connection between Molina and Gonzalez. Furthermore, the prosecutor did not stray outside the discretionary boundaries set forth by the District Court. Under these circumstances, we cannot hold that the court abused its discretion in allowing the Government to question Molina about his relationship with Gonzalez in an effort to lay a foundation for further gang affiliation questions.
*393 Gonzalez next argues that the Government committed prosecutorial misconduct by suggesting and insinuating that Molina and Gonzalez were gang members, thereby causing prejudice. We ordinarily review for abuse of discretion the District Court’s decisions on claims of prosecutorial misconduct. United States v. Molina-Guevara, 96 F.3d 698, 703 (3d Cir.1996). The Government argues, however, that because Gonzalez failed to mention prosecutorial misconduct at trial or in his Motion for a New Trial, Gonzalez failed to preserve this issue. The proper standard of review should therefore be plain error. “Under plain error review, [the court] may grant relief if (1) the District Court committed an ‘error,’ (2) it was ‘plain,’ and (3) it affected ‘substantial rights’ of the defendant.” United States v. Plotts, 359 F.3d 247, 249 (3d Cir.2004) (internal citation omitted).
Gonzalez has not shown plain error. The Government did not exceed the bounds of permissible cross-examination established by the District Court in the interest of giving the Government the opportunity to establish bias for the purpose of impeaching Molina. But even under the abuse of discretion standard, Molina’s claim fails. The questions of gang affiliation were limited in scope and amounted to a small piece of the total aggregate information regarding Molina’s credibility. The prosecution established that Molina (1) lied to police during the initial field investigation at the time Gonzalez was arrested by giving an alias; (2) had multiple prior convictions including conspiracy to distribute heroine and crack, manufacturing and possessing a controlled substance, making terroristic threats and harassment, resisting arrest, and many other charges and arrests; (3) admitted to violating his probation “a number of times”; (4) was then serving four to ten years for conspiracy to distribute drugs; and (5) had a tattoo on his arm reading “fuck the law.”
The Government approached the topic of gang affiliation on three separate occasions in the presence of the jury. The first instance occurred when Molina was asked “do you know anyone, the Carbonellas, Carbonells____ Carbonellis?” App. at 128a. The word “gang” was never used. The second instance occurred when Molina was asked “are [any of your] tattoos associated with a particular gang that you’re a member of? ... You’re not a member of a gang, you’re not involved with any gangs?” App. at 129a-130a. The third and final instance occurred when Molina was asked, “Do you know anyone by the name of Raffi.... Freddie? ... June Bug? ... [or] Mike?” App. at 132a-133a. After responding “no” to these questions, Molina was asked if he knew “anybody associated with those gangs?” App. at 133a.
There was no abuse of discretion in the District Court’s ruling that Gonzalez had not shown prosecutorial misconduct. Gonzalez argues that under the rules regarding prosecutorial misconduct established in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), a prosecutor may not make improper insinuations or suggestions to the jury through cross-examination of a witness. However, the Berger Court noted that its holding was tied closely to the facts present in that case, stating that:
If the case against Berger had been strong, or, as some courts have said, the evidence of his guilt “overwhelming,” a different conclusion might have been reached. Moreover, we have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect *394 upon the jury which cannot be disregarded as inconsequential.
Id. at 89 (internal citations omitted).
In contrast, in this case the Government merely asked on three separate occasions if Molina knew people the prosecutor believed to be members of a gang or if his tattoos affiliated him with a gang. These questions did not convey to the jury the prosecutor’s personal knowledge that Molina was a gang member. Moreover, because there was very little follow-up after Molina provided negative answers, the prosecutor did not insinuate that Molina was lying.
In light of the large amount of non-gang related information elicited about Molina’s propensity for untruthfulness and his disregard for the law, we conclude that there was ample other evidence to lead the jury to reach the same adverse credibility finding. The Government did not create a clear and substantial prejudice resulting in a manifestly unfair trial, and we reject Gonzalez’s claim of prosecutorial misconduct.
Gonzalez’s final argument is that the District Court’s alleged error and the prosecutor’s alleged misconduct were prejudicial and harmful to him. In United States v. Cross, 308 F.3d 308 (3d Cir.2002), we held that improper admission of evidence is non-constitutional in nature and that the non-constitutional harmless error standard applies to such situations. Id. at 326. We need not decide whether the alleged error in this case was constitutional or non-constitutional because we have not found error. Whether we apply the constitutional harmless error doctrine that requires a showing that the error was “harmless beyond a reasonable doubt” or the non-constitutional harmless error doctrine that requires a showing that it is “highly probable that the error did not contribute to the judgment,” id., we reject Gonzalez’s argument that the combination of the prosecutor’s misconduct and the court’s stamp of approval by overruling objections to gang affiliation questions resulted in the denial of a fair trial. As we concluded above, the prosecution did not commit misconduct and the court did not commit error by allowing preliminary “relationship” and “gang affiliation” questions in an effort to lay a foundation for the admission of gang membership evidence. Moreover, even if we were to find non-constitutional error, it would have been harmless. The overwhelming weight of additional bad character evidence concerning Molina, specifically his lying to police, his use of an alias, his criminal history, his numerous probation violations, and his derogatory tattoo, would have been sufficient to lead the jury to conclude that Molina was not credible. Thus, even if there were error, the error did not contribute to the judgment and was therefore harmless.

CONCLUSION

For the foregoing reasons, we will affirm the District Court’s judgment of conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g).