UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Dee OKANE, Defendant–
Appellant.

No. 93–3277.

United States Court of Appeals,
Tenth Circuit.

April 3, 1995.

Submitted on the briefs: *

Randall K. Rathbun, U.S. Atty., and Richard L. Hathaway, Asst. U.S. Atty., Topeka, KS, for plaintiff-appellee.

J. Richard Lake, Holton, KS, for defendant-appellant.

Before BALDOCK and BRORBY, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.

---

* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed.R.App.P. 34(f); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

BRORBY, Circuit Judge.

Defendant Robert Dee Okane appeals the district court's interpretation and application of various provisions of the Sentencing Guidelines that were relied upon in upwardly departing from the otherwise applicable guideline range. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), and we vacate the sentence imposed and remand for re-sentencing.

## BACKGROUND

Robert Okane, his brother Walter Okane, Thomas J. Gieseke and William L. Blacketer, were involved in a series of armed bank robberies of federally insured financial institutions in and around the Kansas City, Missouri area.[1] Robert Okane admitted his participation in a total of twenty three robberies. The defendants were subsequently charged by informations, and later superseding informations, in federal district court in Kansas. Each defendant thereafter entered into a plea agreement where they agreed to waive indictment and venue and· plead guilty to certain counts of the superseding informations in exchange for dismissal of the remaining counts.

Under the terms of Mr. Okane's plea agreement, he would plead guilty to all twelve counts of the superseding information. Counts one, three and five through twelve charged Mr. Okane with the armed bank robbery of ten federally insured banks in Kansas and Missouri, in violation of 18 U.S.C. §§ 2, 2113(a) and 2113(d). In counts two and four, Mr. Okane ·was charged with using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c). In exchange for his pleas of guilty, the government agreed not to pursue prosecution on the remaining thirteen bank robberies in which he admitted his involvement, as well as agreeing not to advocate a particular sentence and not to oppose a three-level reduction for acceptance of responsibility.

The district court sentenced Mr. Okane to 262 months imprisonment on each of the ten armed bank robbery counts with those sentences to be served concurrently. The district court also sentenced Mr. Okane to five years imprisonment on each of the two firearms charges, to be served consecutively to each other and consecutively to the sentences imposed on the robbery counts. On appeal, Mr. Okane only challenges the sentences imposed on the ten robbery counts, asserting those sentences resulted from an erroneous application of the sentencing guidelines. In order to address Mr. Okane's claims, we must first understand the methodology used by the district court in calculating Mr. Okane's sentence.

The presentence report set Mr. Okane's combined adjusted offense level at 37 under the multiple count adjustment of U.S.S.G. § 3D1.4. After a three-level downward adjustment for Mr. Okane's acceptance of responsibility, his adjusted offense level was set at 34. The presentence report then determined Mr. Okane's criminal history category should be level I. The sentencing guideline range for an individual with a total offense level of 34 and a criminal history category of I is 151 to 188 months of imprisonment. At sentencing, however, the district court, in accordance with the recommendation in the presentence report, departed upward from this guideline range by making two alternative departure calculations.

As we understand the district court's first ruling, the court upwardly departed by increasing Mr. Okane's offense level by three levels, from 34 to 37. The district court made three separate increases to Mr. Okane's offense level. The first increase was attributed to the fact that Mr. Okane's offense level was increased only five levels under U.S.S.G. § 3D1.4, even though he pled guilty to ten separate bank robberies. The second increase was based on prior uncharged similar adult criminal conduct under U.S.S.G. § 4A1.3(e). This departure was warranted by Mr. Okane's admitted participation in the thirteen additional bank rob-

---

1. Robert Okane, along with Messrs. Gieseke and Blacketer have appealed their sentences in these companion cases. Mr. Gieseke and Mr. Blacketer's appeals, Nos. 93–3273 and 93–3283, respec-

tively, were disposed of in unpublished orders and judgments filed this date. Walter Okane has not appealed his sentence.

beries. The third and final increase was based on extreme psychological injury to certain victims in the various bank robberies, pursuant to U.S.S.G. § 5K2.3 of the Guidelines. After this three level departure, Mr. Okane's sentencing range became 210 to 262 months imprisonment.

In the alternative, the district court indicated it would depart by raising Mr. Okane's offense level only one level (from 34 to 35) under § 5K2.3 based on extreme psychological injury to certain victims of these robberies. At the same time, the sentencing court indicated it would depart by increasing Mr. Okane's criminal history category from level I to level III, based on a determination that category I underrepresented his criminal history because of his admitted involvement in thirteen additional uncharged robberies. The district court observed the guideline range for a defendant with an offense level of 35 and a criminal history category of III is 210 to 262 months, the same range applicable to a defendant with an offense level of 37 and a criminal history category of I. Over Mr. Okane's objections, the district court then sentenced him to 262 months imprisonment on each of the ten robbery counts, to be served concurrently. On appeal, Mr. Okane challenges each aspect of the district court's decision to depart upward.

## DISCUSSION

### I.

■ In analyzing the propriety of a district court's decision to depart upward, we apply a three-tiered review process, which we first enunciated in *United States v. White,* 893 F.2d 276, 277 (10th Cir.1990).[2] Under *White,* step one requires us to examine the record *de novo* to determine whether the district court properly identified the existence of appropriate circumstances warranting a departure. *See United States v. Tisdale,* 7 F.3d 957, 962 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1201, 127 L.Ed.2d 549 (1994); *White,* 893 F.2d at 277–78.

2. Our three-tiered analysis in *White* is consistent with the Supreme Court's decision in *Williams v. United States,* 503 U.S. 193, 201–03, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992), which en-

A sentencing court may depart from the guideline sentence only if it " 'finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " *White,* 893 F.2d at 277–78 (quoting 18 U.S.C. § 3553(b)). Where departure is based on factors that are considered by the guidelines, the sentencing court cannot depart unless it finds that consideration to be inadequate in light of unusual circumstances.

*Tisdale,* 7 F.3d at 962 (citations omitted).

■ If we find the existence of circumstances warranting a departure, the second step of the analysis involves a factual review of the record to "ascertain whether the circumstances cited by the district court to justify departure *actually exist* in the instant case." *White,* 893 F.2d at 278 (emphasis added). We will not disturb a district court's factual findings that circumstances warranting a departure exist in a particular case absent a showing of clear error. *See id.* (citing 18 U.S.C. § 3742(e)); *accord United States v. Keys,* 899 F.2d 983, 990 (10th Cir.), *cert. denied,* 498 U.S. 858, 111 S.Ct. 160, 112 L.Ed.2d 125 (1990). "A finding of fact is clearly erroneous only if it is 'without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made.' " *United States v. Chavez–Palacios,* 30 F.3d 1290, 1295 (10th Cir.1994) (citation omitted).

Finally, having determined that *some* departure is legally appropriate, and that the facts of a particular case support such a departure, the third step in the analysis requires us to determine whether the *degree* of departure actually imposed by the district court was reasonable. *See White,* 893 F.2d at 278 (citing 18 U.S.C. § 3742(e)(3)); *see*

dorsed a similar two-step approach. *See United States v. Tsosie,* 14 F.3d 1438, 1440 n. 2 (10th Cir.1994) (discussing why *Williams* and *White*

*also Tisdale,* 7 F.3d at 963 (collecting Tenth Circuit cases).

## II.

■ In reviewing a district court's decision to depart from the otherwise applicable guideline range, we must be careful not to blur the distinction between offense level departures and criminal history departures, a distinction well recognized by our prior cases. *See, e.g., United States v. Flinn,* 987 F.2d 1497, 1500, 1504 (10th Cir.1993); *United States v. Fortenbury,* 917 F.2d 477, 479–80 (10th Cir.1990). We reiterate the principle, basic to the Guidelines, that "[f]actors considered in departing from applicable criminal history categories are distinct from those used in departing from appropriate offense levels." *United States v. Thornton,* 922 F.2d 1490, 1494 (10th Cir.1991) (district court erred in "ignor[ing] the distinction between offense level and criminal history category departures."); *United States v. Jackson,* 921 F.2d 985, 990–92 & n. 4 (10th Cir.1990) (en banc) ("The factors relevant to offense level and those related to criminal history are perpendicularly opposed; they are not interchangeable.").[3]

■ Because an offense level departure "must be based on a circumstance that is 'substantially in excess of that which is *ordinarily involved in the offense of conviction,'*" *Thornton,* 922 F.2d at 1494 (quoting U.S.S.G. § 5K2.0) (emphasis in original), such a departure must be supported by some aggravating circumstance or otherwise extraordinary aspect "of the offense for which the defendant was convicted." *Id.* (emphasis omitted). For example, in *United States v. Baker,* 914 F.2d 208 (10th Cir.1990), *cert. denied,* 498 U.S. 1099, 111 S.Ct. 993, 112 L.Ed.2d 1077 (1991), we affirmed an upward departure to the defendant's base offense level attributable to his use of dynamite and his abduction of an individual during the commission of the robbery for which he was

then being sentenced. *Id.* at 210–11. In other words, a departure by offense level must be related to "some aspect of the *instant* offense, not subsequent crimes." *Fortenbury,* 917 F.2d at 479 (emphasis in original).

■ But when a court seeks to depart upward based on circumstances not tied to the specific offense of conviction, then departing by way of the defendant's offense level is ordinarily improper. Our case law holds that under those circumstances, increasing the defendant's criminal history category is the appropriate means of departing upward. *See Thornton,* 922 F.2d at 1494; *Jackson,* 921 F.2d at 991.[4] Moreover, this understanding is consistent with the Policy Statement to § 4A1.3, which provides "[i]n considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower *criminal history category,* as applicable." U.S.S.G. § 4A1.3, p.s. (emphasis added).

### A.

#### 1.

The district court first departed upward by increasing Mr. Okane's offense level one point based on the alleged failure of § 3D1.4 to account for the remaining five robberies to which Mr. Okane pled guilty. As indicated above, the district court relied on the commentary to § 3D1.4, which provides, in relevant part, that "departure would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than 5 Units." U.S.S.G. § 3D1.4, comment. (backg'd.).

■ We have no trouble concluding Mr. Okane's pleas of guilty to five additional bank robbery charges, which did not amount to additional units under § 3D1.4, nonetheless constitute sufficiently unusual circumstances

are compatible approaches to reviewing upward departures).

3. "We have recognized that ordinarily, a district court must premise its departure on the guidelines' deficiency in assigning a defendant a particular offense level, criminal history category, or both, [and] also must explain a departure sen-

tence in these terms." *Tisdale,* 7 F.3d at 963 (citation and internal quotations omitted).

4. *See also United States v. Bernhardt,* 905 F.2d 343, 344–45 (10th Cir.1990); *United States v. Russell,* 905 F.2d 1450, 1454–55 (10th Cir.), *cert. denied,* 498 U.S. 904, 111 S.Ct. 267, 112 L.Ed.2d 224 (1990).

to support an upward departure under step one. Under similar circumstances involving a defendant who pled guilty to fifteen counts of robbery, only five of which were expressly counted as units under § 3D1.4, the First Circuit stated "[w]ithout question, the circumstance relied on by the district court [i.e., the remaining ten robbery convictions] to justify departure from the Guidelines—the large additional number of bank robberies committed by defendant—is sufficiently 'unusual' to justify a departure." *United States v. Chase,* 894 F.2d 488, 491 (1st Cir.1990).

■ By pleading guilty to these five additional robberies, we find the record contains a sufficient factual basis to satisfy step two of our review. *See id.* Therefore, we turn to the final question, which is the reasonableness of the degree of departure. In conducting reasonableness review, we are to consider "the district court's proffered justifications, as well as such factors as: the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, and the need to avoid unwarranted sentencing disparities." *Flinn,* 987 F.2d at 1501 (citations omitted); *see also Kalady,* 941 F.2d at 1099. " 'The first of these factors—the district court's proffered reasons for the degree of departure—is an absolute requirement,' " *Tsosie,* 14 F.3d at 1443 (citation omitted), and "[w]e may consider the other indicia of reasonableness only if this requirement is met." *Jackson,* 921 F.2d at 990.

■ We find the district court's proffered reason for departing, which was Mr. Okane's additional pleas of guilty to five other robbery charges, is legally sufficient to warrant a one level upward departure. Furthermore, the other indicia of reasonableness referred to above support the conclusion this departure was reasonable. Armed bank robbery is a serious, violent crime, to which Mr.

Okane pled guilty to ten such offenses. This fact provides strong support for a departure. In addition, the societal interest in protecting the public from the potential harm associated with these crimes is another important concern in this case, especially in light of the severity and the frequency of these robberies.

■ While the Guidelines' overarching purpose of achieving uniformity and proportionality in sentencing is a countervailing concern in this calculus, *see Flinn,* 987 F.2d at 1502, the Guidelines do contemplate some sentencing disparities in cases where the circumstances justify it. The Guidelines do not prohibit any sentencing disparity; they prohibit *unwarranted* sentencing disparities. In this case, the offenses in question are undoubtedly serious and we find they warrant a one-level departure.

## 2.

■ The district court next increased Mr. Okane's offense level one point based on the thirteen uncharged bank robberies in which Mr. Okane admitted his participation. While uncharged criminal conduct is certainly a valid basis for an upward departure, *see* U.S.S.G. § 4A1.3, the district court erred by departing upwards by increasing Mr. Okane's offense level, as opposed to his criminal history category.

■ We reiterate our statement in *Thornton* that "[p]rior criminal conduct reflecting on the adequacy of defendant's criminal category does not provide the basis for an *offense level* departure." *Thornton,* 922 F.2d at 1494 (emphasis in original). When a district court seeks to depart upwards based on § 4A1.3(e) of the Guidelines on the grounds that the defendant's criminal history score is underrepresentative of the defendant's history of criminal conduct, the departure should ordinarily[5] be by way of an enhancement to the criminal history category.

---

5. There is one potentially recurring situation where a § 4A1.3 departure would be accomplished by way of increasing the base offense level. This situation represents an exception to the general rule that § 4A1.3 departures are made by increasing the defendant's criminal history category.

Prior to a 1992 amendment to § 4A1.3, it was unclear how a sentencing court was to depart upward by criminal history score when the defendant was already a level VI offender. Courts, including this court, indicated no set formula was appropriate and left this "continuing conundrum" to the discretion of the sentencing courts.

In this case, the district court upwardly departed because it believed the defendant's criminal history category was underrepresented. This is entirely proper under § 4A1.3. *See* U.S.S.G. § 4A1.3(e) & p.s. But applying § 4A1.3 to depart by offense level, rather than criminal history score, was error.

### 3.

Finally, the district court upwardly departed one level under § 5K2.3 [6] for extreme psychological injury to victims of these bank robberies. The district court relied primarily on the findings in the presentence report that one victim of one of the robberies had a gun pointed at her midsection, and later at her back, and that she was "extremely concerned that [the defendant] would hurt her." The victim further indicated she has exhibited behavioral changes that she attributes to this incident. Another victim of one of the robberies stated that her preexisting anxiety disorder has been exacerbated by this incident and her psychologist believes she has become more aggressive as a result of these robberies.

A departure under § 5K2.3, premised on serious psychological injury to the victim, qualifies as a ground for an offense level departure. "The bases for departure listed in U.S.S.G. §§ 5K2.1–5K2.15 all involve some aspect of the *instant* offense," and therefore, departure by offense level is appropriate. *Fortenbury,* 917 F.2d at 479 (emphasis in original); *see also Flinn,* 987 F.2d at 1504–05 (departure by offense level based on § 5K2.5 and § 5K2.7 appropriate).[7]

*See United States v. Kalady,* 941 F.2d 1090, 1100 (10th Cir.1991); *Russell,* 905 F.2d at 1456. As a result, sentencing courts would often extrapolate to a hypothetical criminal history category beyond level VI, rather than permitting a "mechanical extension of the criminal offense categories as a means of extending the criminal history categories [beyond level VI]." *Russell,* 905 F.2d at 1456. In *Russell,* we stated that allowing the sentencing courts to " '[a]rbitrarily mov[e] to a new offense level when the highest criminal history category proves inadequate would skew the balance of factors which the Commission created in the Sentencing Table.' " *Russell,* 905 F.2d at 1456 (quoting *United States v. Roberson,* 872 F.2d 597, 607–08 (5th Cir.), *cert. denied,* 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989)) (emphasis omitted).

In 1992, however, the Commission specifically addressed this issue through an amendment to the policy statement to § 4A1.3. The amended version now provides, in relevant part:

> [w]here the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure *by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI* until it finds a guideline range appropriate to the case.

U.S.S.G. § 4A1.3, p.s. (emphasis added).

We are obligated to give authoritative weight to the commentary in the Guidelines, which includes policy statements, *see Stinson v. United States,* ─── U.S. ───, ───, 113 S.Ct. 1913, 1917, 123 L.Ed.2d 598 (1993), unless they conflict with federal law or are otherwise plainly erroneous, *see id.* It thus becomes readily apparent the amendment to § 4A1.3 has eviscerated our statement in *Russell* that the sentencing court may not depart by offense level when the defendant is already a level VI offender. As we indicated in *Russell,* "[t]he Commission would have provided such a formula had one been intended." *Russell,* 905 F.2d at 1456. While this statement was correct in 1990 when *Russell* was decided, the Commission's 1992 amendment now provides the missing formula. Under this new amendment, "instead of hypothesizing a criminal history range more than VI, the guidelines require a sentencing court to look to the other axis and consider the available ranges from higher offense levels." *United States v. Carr,* 5 F.3d 986, 994 (6th Cir.1993).

Of course, in cases involving an underrepresented criminal history category where the defendant was not a level VI offender, this amendment would be inapplicable, and upward departures under § 4A1.3 would be accomplished by enhancing the defendant's criminal history category.

6. The policy statement to § 5K2.3 provides, in pertinent part:

> [i]f a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence. . . .
> Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns.

7. *See also United States v. Newman,* 965 F.2d 206, 209 (7th Cir.) (affirming district court's de-

Moreover, we agree with the district court's finding, albeit an implicit one, that the term "victim," as used in § 5K2.3 with respect to a bank robbery, includes employees of the bank as well as customers. *See United States v. Bond,* 22 F.3d 662, 671–72 (6th Cir.1994) (discussing *United States v. Lucas,* 889 F.2d 697, 700 (6th Cir.1989) and acknowledging that in general, the "victim" of a bank robbery includes employees of the bank and customers present); *see also United States v. Lanzi,* 933 F.2d 824, 827 (10th Cir.1991) (implicitly recognizing that a "victim" of a bank robbery includes, for purposes of § 2B3.1(b)(3), a bank employee); *accord United States v. Muhammad,* 948 F.2d 1449, 1455–56 (6th Cir.1991) ("victim" of a bank robbery under § 2B3.1(b)(3) includes employees and customers present), *cert. denied,* 502 U.S. 1119, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992). *Cf. United States v. Hoyungowa,* 930 F.2d 744, 747 (9th Cir.1991) (limiting the application of § 5K2.3 to "the direct victim of the crime" and not to others affected by the crime, such as the victim's family; not defining the parameters of "the direct victim of the crime").

■ Section 5K2.3 permits an upward departure by offense level because it involves a factor related to the offense of conviction. *See Fortenbury,* 917 F.2d at 479. Thus, step one of our review is satisfied. We must now examine whether there is a factual basis for the district court's decision to depart upward. In making this determination, we are mindful that it is the government's burden of proving, by a preponderance of the evidence, that the factual circumstances of this case warrant an upward departure. *See United States v. Zamarripa,* 905 F.2d 337, 341 (10th Cir.1990) (citing *United States v. Kirk,* 894 F.2d 1162, 1164 (10th Cir.1990)). While we are certainly sympathetic to the trauma incurred by several of the victims of these robberies, our review of the record discloses the absence of any evidence as to the "normal" level of psychological injury attributable to a victim of a bank robbery. Therefore, the district court's finding that these victims suffered "extreme" psychological injury is clearly erroneous.

■ Both the text of § 5K2.3 and logic mandate that before a sentencing court may depart upwards under this section, there must be some evidence of: (1) the nature of the injury actually suffered by the victims in this case, *and* (2) the psychological injury "normally resulting from the commission of the offense." U.S.S.G. § 5K2.3 p.s. These requirements flow from the fact that in enacting § 5K2.3, the Commission did not authorize sentencing courts to depart upwards for *any* psychological injury to the victim, but rather, only allowed a departure based on a finding of "extreme" psychological injury. Thus, there must be some evidence of both of these elements in order to enable the sentencing court to determine whether the injury actually suffered is sufficiently serious, relative to the normal injury incurred, to warrant a departure.

We have had only one other occasion to discuss the application of § 5K2.3. In *Zamarripa,* we concluded the district court's finding that the victim had suffered extreme psychological injury under § 5K2.3 was clearly erroneous. This conclusion was compelled by the parties' stipulation that the therapist treating the victim could not state that the harm to the victim was greater than normal. *See Zamarripa,* 905 F.2d at 341. Based on the lack of evidence of the "normal" level of injury, we held the district court's finding of fact was unsupported by the record and clearly erroneous. *Id.*

Although *Zamarripa* is factually distinguishable, the reasoning employed in that case applies in this case. The government failed to carry its burden in *Zamarripa* because it had not provided the sentencing court with any evidence of the normal level of injury incurred under these circumstances. In the present case, even assuming the presentence report contains evidence sufficient to establish the injury actually suffered in this case, the record is devoid of any findings as to the normal level of injury that results from these circumstances. Thus, as in *Za-*

cision to depart upward under § 5K2.3 by raising defendant's offense level by two points), *cert. denied,* —— U.S. ——, 113 S.Ct. 470, 121 L.Ed.2d 377 (1992); *United States v. Astorri,* 923 F.2d 1052, 1058–59 (3d Cir.1991) (same).

*marripa*, the district court's finding that the victims suffered "extreme" psychological injury is unsupported by the record. *See United States v. Fawbush*, 946 F.2d 584, 586–87 (8th Cir.1991) (evidence before the district court was insufficient to support a finding that the psychological injury incurred "exceeded that normally endured" in a particular type of case). *But cf. United States v. Passmore*, 984 F.2d 933, 936 (8th Cir.1993) (citing cases for the proposition that expert testimony is not required to establish emotional trauma to a young victim of a sexual assault because court may rely on common sense and experience); *id.* at 939 (McMillan, J., dissenting) (refusing to speculate or assume that the victim's psychological injuries were obvious and sufficiently severe to come within § 5K2.3 and holding there was no evidence to support the district court's findings).[8]

To summarize, the one level increase based on § 3D1.4 was proper and reasonable; the one level increase based on § 4A1.3 was improper as a matter of law; and the one level increase based on § 5K2.3 unsupported by the record in this case. Before determining whether a remand is necessary, however, we examine the district court's alternative ruling.

### B.

The district court's alternative ruling increased Mr. Okane's offense level one point under § 5K2.3 and increased his criminal history category from level I to level III based on the thirteen uncharged robberies. We address each of these issues in turn.

As for the offense level departure under § 5K2.3, we hold this departure unsupported by the record in this case for the reasons stated above. There is no evidence as to the "normal" psychological injury incurred during a bank robbery and thus, the district court's finding is clearly erroneous.

 The district court also concluded a criminal history category of I underrepresented Mr. Okane's criminal history and that a departure from level I to level III was warranted. We believe Mr. Okane's involvement in thirteen additional uncharged bank robberies is clearly a sufficient factor on which a sentencing court may upwardly depart, and thus, step one is satisfied. Moreover, Mr. Okane admitted he was involved in these additional robberies, and as such, there is a factual basis for this departure. Therefore, we must determine whether the degree of departure—from level I to level III—was reasonable.

 In assessing the reasonableness of the degree of departure, we have been particularly demanding of sentencing courts and have implored them to be precise in their reasoning and analysis of why they selected a particular criminal history category. We recently stated:

[d]espite our repeated instructions that a 'district court must specifically articulate reasons for the degree of departure,' *Flinn*, 987 F.2d at 1502, the district court in the instant case merely stated the legal and factual bases for its upward departure, without offering any analysis supporting its increase in the level of departure.

... When the district court fails to [explain its reasoning], we cannot hypothesize as to the reasoning that *might* have been employed by the sentencing court....

As we have held before, "[m]erely explaining 'why a departure was made does not fulfill the separate requirement of stating the reasons for imposing the particular sentence.'" [*United States v. Kelly*, 1 F.3d 1137, 1144 (10th Cir.1993)] (quoting *Flinn*, 987 F.2d at 1502). In *Kelly* and in *Flinn*, we were forced to remand because

---

8. Although this case does not require us to address the manner in which the prosecution might attempt to carry its burden of demonstrating the "normal" level of injury, we note that reliance on an expert witness would likely be sufficient, but not necessary. *See United States v. Ellis*, 935 F.2d 385, 396 n. 12 (1st Cir.), *cert. denied*, 502 U.S. 869, 112 S.Ct. 201, 116 L.Ed.2d 160 (1991). Under the Guidelines, the touchstone is whether there is evidence before the sentencing court "possess[ing] a minimum indicia of trustworthiness." *United States v. Cook*, 949 F.2d 289, 296 (10th Cir.1991). If so, then that information may be relied upon by the sentencing court in determining the propriety of a particular sentence. *See United States v. Ortiz*, 993 F.2d 204, 207–08 (10th Cir.1993) (discussing U.S.S.G. § 6A1.3(a), comment.).

the district courts had not provided a precise methodology for their respective selections of a particular criminal history category.

*United States v. Yates,* 22 F.3d 981, 990 (10th Cir.1994). When the district court fails to explain, with precision and specificity, the methodology and reasoning it utilized in selecting a particular criminal history category in upwardly departing, we have been forced to remand the case for resentencing.

▮ A review of the record in the present case reveals the same types of deficiencies we have found in our prior cases. The district court made two statements in its alternative ruling departing upward. "[T]he Court finds the defendant's criminal history category of 1 underrepresents his prior criminal activity. The defendant participated in 13 additional armed bank robberies that were not charged in this case, and if he had been convicted of those, his criminal history would not have been one." The court then stated its agreement with the probation officer's recommendation that "a criminal history category of 3 more appropriately represents his prior criminal conduct."

These statements, without more, simply do not constitute the type of detailed explication required to permit us to engage in a meaningful review of whether the decision to depart from level I to level III was reasonable. As in *Yates, Kelly,* and *Flinn,* "the district court failed to furnish a detailed rationale for selecting the particular criminal history level, but relied instead on its initial reasons justifying departure." *Yates,* 22 F.3d at 991. Under such circumstances,

> [w]e are unable to *give* the deference ordinarily accorded a district court's decision for the degree of departure … because a district court's justification for an upward departure does not by itself supply a rationale for the specific degree of departure selected, and we, as a reviewing court, are not able to supply that rationale.

*Id.; see also Jackson,* 921 F.2d at 993 ("It is not our task to determine what a district court's explanation for a departure could be."). All the record shows is that the sentencing court believed level III was an appropriate departure. The record simply does not address the critical question of *why* the district court felt category III was a more appropriate category than category I, other than a conclusory statement of agreement with the probation officer's recommendation. Without such an explanation, "it is impossible to determine whether the sentence was reasonable." *Tsosie,* 14 F.3d at 1443 (emphasis added) (citing *United States v. Pool,* 937 F.2d 1528 (10th Cir.1991)).

Given our inability to review the district court's degree of departure in this case, a remand for resentencing is necessary. On remand, we note "[t]he reasons the court gives for its degree of departure should be 'couched in terms of inadequacies in an offense level or criminal history category.'" *Tsosie,* 14 F.3d at 1443 (quoting *United States v. Roth,* 934 F.2d 248, 252 (10th Cir. 1991)). We also reiterate our prior approval of the use of "analogies to offense characteristic levels, criminal history categories, and other principles in the guidelines to determine the appropriate degree of departure." *Roth,* 934 F.2d at 252.

## CONCLUSION

The discussion above exposes several defects in the district court's application of various provisions of the Guidelines to the somewhat complex facts of Mr. Okane's case. Because of these errors, we **REMAND** to the district court with instructions to **VACATE** Mr. Okane's sentence and to resentence in a manner not inconsistent with this opinion.

McWILLIAMS, Senior Circuit Judge, concurring in the result.

I agree that Okane's sentence should be vacated and that he be resentenced. However, I am of the firm view that the Sentencing Guidelines do not contemplate that where, as here, a district court, under 18 U.S.C. § 3553(b) and Sentencing Guideline § 5K2.0, decides to make an upward departure from a guideline range established by a prior determination of a defendant's base offense level and criminal history category, that the district court may, in making such upward departure, go back, so to speak, and raise the defendant's base offense level, or his criminal

history category, or both, and then arrive at a second and "brand new" guideline range dramatically in excess of the original guideline range. The district court should simply depart upward from the guideline range, as established, and give its reasons therefor.

Sentencing Guideline § 5K2.3 provides that if a victim suffers psychological injury much more serious than that normally resulting from the commission of the offense, the district court "may increase the sentence above the authorized guideline range." That guideline, in my view, by its own terms simply authorizes a district court, if it finds "serious psychological injury," to "increase the sentence above the authorized guideline range," but does not authorize a district court to factor the "serious psychological injury" into a recalculation of the base offense level and then come up with a second and "brand new" guideline range, much in excess of the original guideline range.