70 F.3d 1282
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Philip Frank ATKINSON, Defendant-Appellant.
 No. 94-4229.
 United States Court of Appeals, Tenth Circuit.
 Oct. 16, 1995.
 
 Before ANDERSON, BALDOCK, and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. This cause is therefore ordered submitted without oral argument.
 
 
 2
 Philip Atkinson pled guilty to one count of transmitting threats in interstate commerce in violation of 18 U.S.C. Sec. 875(c). As a result of two separate upward departures by the district court, Mr. Atkinson was sentenced to a 48-month term of imprisonment. On appeal, he challenges each of these upward departures. Our jurisdiction arises under 28 U.S.C. Sec. 1291, and we remand for resentencing.
 
 BACKGROUND
 
 3
 Mr. Atkinson was charged with twelve counts of violating Sec. 875(c), stemming from his use of the United States mails to send letters threatening serious bodily injury to various individuals over a four-month period in 1993. These letters were sent to his wife, Linda Gearheart, her mother, her daughter, her divorce attorney, and other unnamed friends, neighbors, and family members of Ms. Gearheart.
 
 
 4
 Pursuant to a plea bargain, Mr. Atkinson agreed to plead guilty to count three of the indictment in exchange for dismissal of the remaining eleven counts and the government's agreement not to object to a sentence at the low end of the applicable guideline range. App., Tab 4 at 3, 17-21. The government also agreed to adopt the position that Mr. Atkinson did not commit any overt acts in attempting to carry out these threats.[1] The threat forming the basis for count three was a letter sent to Ms. Gearheart that involved a story of genital mutilation, with a power drill, of two unnamed victims by an unnamed assailant. Many of the other threats relative to the other counts were less explicit.
 
 
 5
 In accordance with Rule 32 of the Federal Rules of Criminal Procedure, a probation officer prepared a presentence report. At the sentencing hearing, defense counsel objected to the inclusion of Mr. Atkinson's prior relationships with his ex-wives and the suggestion in the report that those relationships could be used to support an upward departure under Sec. 4A1.3(e) based on the inadequacy of Mr. Atkinson's criminal history score. App., Tab 5 at 4-5. The court sustained this objection and ordered paragraphs 141 through 160 and 165 through 167 stricken and further ordered that the probation officer prepare a revised, redacted presentence report. Id. at 13-14. It is important to note paragraph 225 of the initial presentence report stated the court might wish to consider a departure under Sec. 4A1.3(e) based on "the defendant's other criminal conduct against his former wives ... and against officers in the Salt Lake County Jail." Init. PSR, p 225. While the redacted report no longer contained information relating to Mr. Atkinson's former wives, the information regarding his conduct while he was held in the Salt Lake County jail was not ordered stricken and remained in the redacted report. Rev. PSR paragraphs 122-24. But while that information remained in the presentence report, the probation officer deleted the suggestion made in the initial report that this conduct might warrant an upward departure. Id. at p 207.
 
 
 6
 Section 2A6.1(a) established an unadjusted base offense level of twelve. Init. PSR, p 110. The presentence report also recommended a six level increase under Sec. 2A6.1(b)(1), a two level increase under Sec. 3A1.1 for vulnerable victims,[2] and another two level increase under p 3C1.1 for obstruction of justice. Id., paragraphs 111-14. The court accepted the recommendation for the two separate two level increases, but declined to apply the six level increase and denied Mr. Atkinson's request for a two level decrease under Sec. 3E1.1(a) for acceptance of responsibility. App., Tab 5 at 15-16. These adjustments resulted in an adjusted base level of 16 which, when combined with Mr. Atkinson's criminal history category of I, established a sentencing range of 21 to 27 months, which is less than the five year maximum sentence permitted under Sec. 875(c). See USSG Ch. 5, Pt. A (Sentencing Table). Id.
 
 
 7
 The probation officer also suggested two departures might be warranted. The first would be under Sec. 5K2.3 based on the extreme psychological injury to the victims. Init. PSR, p 224. The second departure was premised on the inadequacy of a criminal history level of I, given Mr. Atkinson's relationships with his ex-wives and his conduct in jail relative to these charges. Id. at p 225. After the court ordered the references to the defendant's ex-wives stricken, the court stated it was inclined to depart upward based in part on "the severe emotional and psychological injury caused to others by Mr. Atkinson's actions." App., Tab 5 at 17. The court represented to counsel that "probably I am thinking, just so you'll know, somewhere in the five-year range. Level 24." Id. at 21. The court also indicated that because it had not given the defendant "advance notice of the Court's intention to upward depart," it would postpone the sentence to give defense counsel an opportunity to file an opposition to the proposed departure. Id. at 21-22.
 
 
 8
 At the second sentencing hearing, the district court made two separate upward departures. The first resulted in increasing Mr. Atkinson's criminal history category from level I to level II, "based upon the inadequacy of the criminal history" category in failing to account for "the defendant's other criminal conduct." Id., Tab 6, at 9-10. When defense counsel asked the court to specify precisely "which criminal conduct" the court was referring to, the court responded "[l]et me just refer you to the presentence report." Id. at 9. The second departure resulted in a six level increase to Mr. Atkinson's offense level, from 16 to 22, based on "the extreme psychological injury to the victims" of Mr. Atkinson's threats. Id. at 10. See USSG Sec. 5K2.3, and upon the aggravated nature of Mr. Atkinson's conduct.
 
 
 9
 On appeal, Mr. Atkinson takes issue with both of the district court's upward departures. He first claims the departure under Sec. 5K2.3 was improper because the government failed to demonstrate the psychological injury to the victim was "much more serious" than would normally occur. Even if the departure--six levels--was unreasonable. With respect to the departure made to his criminal history category, Mr. Atkinson argues the district court failed to provide an adequate explanation for this departure.[3]
 
 DISCUSSION
 
 10
 Our recent decision in Okane, 52 F.3d 828, is instructive with respect to all of the issues presented in this appeal. "In analyzing the propriety of a district court's decision to depart upward, we apply a three-tiered review process, which we first enunciated in United States v. White, 893 F.2d 276, 277 (10th Cir.1990)." Id. at 831 (footnote omitted); cf. United States v. Warner, 43 F.3d 1335, 1337 (10th Cir.1994) (downward departure). We must first determine, conducting de novo review, "whether the district court properly identified the existence of appropriate circumstances warranting a departure." Okane, 52 F.3d at 831. If so, then we must examine whether there is evidence in the record demonstrating that "the circumstances cited by the district court to justify departure actually exist in the instant case." Id. (quoting White, 893 F.2d at 278) (emphasis in Okane ). Finally, once we conclude some departure is legally appropriate and is supported by the facts of a particular case, the final step of our review requires an assessment of "whether the degree of departure actually imposed by the district court was reasonable." Id. (emphasis in original) (citations omitted). With this framework in mind, we now consider the propriety of the district court's departures.
 
 A.
 
 11
 GROUNDS FOR DEPARTURE ON THE BASIS OF CONDUCT AND INJURY
 
 
 12
 As indicated, the sentencing proceedings in this case took place on two dates, August 30, and October 6, 1994. In them, the district court clearly expresses its findings that a departure was warranted on two grounds: the egregiousness of Mr. Atkinson's conduct, and extreme psychological injury suffered by the victims.
 
 
 13
 1. Conduct.
 
 The court found that:
 
 14
 [T]he guidelines don't adequately take into account the reprehensible conduct of Mr. Atkinson ... as those details are set forth in the presentence report, and to the extent the guidelines don't adequately take that into account, the Court is inclined to make an upward departure. Now, I need to know whether you want additional time to brief that, Mr. Brass?
 
 
 15
 App. Tab 5 at 20 (emphasis added).
 
 
 16
 As the following excerpts from the hearing transcripts show, the court repeated its position on this point throughout the sentencing proceedings.
 
 
 17
 [THE COURT]: ... there are still lines beyond which one's conduct cannot go without violating the law. And in this case his conduct went far over that line repeatedly. If it was one instance or two or three, severe reactions on maybe even three or four occasions when his world seemed to him to be crumbling around him would be one thing, but to do it repeatedly over time by way of written communications and the ugliness of the threats. I am inclined to do an upward departure for the benefit of the victims, for what I think the penal code anticipates, and that is giving this gentleman a chance to go to a facility where he can get himself treated, to the extent that the Bureau of Prisons has such facilities available, and to appropriately punish this crime. The guidelines were not intended to make this such cookbook justice that we don't take a look at the totality of the circumstances and say no, this may not be condoned.
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 [T]here are lines that you can't cross in doing that. You can't threaten people's lives, you cannot threaten bodily harm whether you intend to carry it out or not. You can't go over the line of talking in terms of ugly acts that you may carry out.
 
 
 21
 Id. at 19-20.
 
 
 22
 * * *
 
 
 23
 * * *
 
 
 24
 I am inclined toward a sufficient period of time where Mr. Atkinson can be removed from the victims for their benefit and his, a sufficient period of time for Mr. Atkinson to receive some psychiatric counseling and treatment as available in the U.S. Bureau of Prisons, and a sufficient period of time to punish what the Court finds to be excessively egregious conduct in dealing with one's fellow human beings with severe and emotional and psychological pain. So that gets me up above a level 16 which is 21 to 26 months. And probably I am thinking, just so you'll know, somewhere in the five-year range. Level 24.
 
 
 25
 Id. at 21 (emphasis added).
 
 
 26
 * * *
 
 
 27
 * * *
 
 
 28
 The letters sent are not a major part of this. I am going to depart upward to a criminal history category of two and to a total offense of 22 and that changes the guideline range to 46 to 57 months and I hereby sentence you, Mr. Atkinson, to four years in federal prison, that is 48 months, recognizing the extreme psychological injury to the victims in this offense. There are ways to deal with grief, there are ways to deal with loss. There are criminal laws that must be complied with. And that is all that I can say about it. We're punishing the acts, not anything else but these acts have to be punished. They were abusive in the extreme.
 
 
 29
 In view of the perceived continuing risk to some people, the possible risk, three years of supervised release will follow the period of incarceration.
 
 
 30
 Id., Tab 6 at 10 (emphasis added).
 
 
 31
 The district court did not err in its express finding that the guidelines do not adequately take into account Mr. Atkinson's reprehensible conduct. USSG Sec. 2A6.1 anticipates the need for upward departures in cases involving threatening communications:
 
 
 32
 The commission recognizes that this offense includes a particularly wide range of conduct and that it is not possible to include all of the potentially relevant circumstances in the offense level. Factors not incorporated in the guideline may be considered by the court in determining whether a departure is warranted.
 
 
 33
 USSG Sec. 2A6.1, comment. (n. 1) (emphasis added).
 
 
 34
 And, Sec. 5K2.0 of the guidelines emphasizes that sentencing courts have discretion to depart, among other reasons, where offense factors are "present to a degree substantially in excess of that which ordinarily is involved in the offense," or where there are "factors in addition to those identified that have not been given adequate consideration by the Commission," or where "the court determines that, in light of unusual circumstances, the guideline level attached to [the] factor is inadequate."
 
 
 35
 As indicated, the district court found that "the Guidelines don't adequately take into account" Mr. Atkinson's reprehensible conduct "as those details are set forth in the presentence report." App. Tab 5 at 20. According to the PSR, after Ms. Gearheart was abused, falsely accused, bullied and intimidated by Mr. Atkinson, she filed for divorce, following which Mr. Atkinson commenced a reign of terror against her, her mother, her daughters and others connected with her. Threatening telephone calls in May, 1993, drove Ms. Gearheart to obtain a restraining order against Mr. Atkinson. He avoided service, then stalked her, and also caused her to be locked out of her residence. Thereafter, over almost half a year, from about June 1, 1993, to November 15, 1993, "Mr. Atkinson mailed or caused to be mailed and hand-delivered approximately 80 pieces of written communications, including letters, postcards, cards, notes, newspaper articles, pictures, and photographs to Ms. Gearheart threatening to maim, mutilate, torture and kill her and her family and friends." Supp.R. Vol. II at p 20 (emphasis added).
 
 
 36
 We will not reproduce the next five paragraphs in the PSR or the communications, but they in fact demonstrate conduct of the most shocking sort, over a prolonged period, and with a great deal of planning. That planning included, among other things, orchestrated mailings from various parts of the United States, clippings cut and altered for grisly effect, and references to others helping him in his schemes against Ms. Gearheart and her family. Mr. Atkinson coupled his physical intimidation with menace to Ms. Gearheart's economic well being, including her housing, duress with respect to her divorce proceedings, and fear for the safety of those dearest to her, her mother and daughters.
 
 
 37
 For purposes of prosecution, the government chose 21 of the approximately 80 communications, ultimately resulting in 12 forming the basis of separate counts of the indictment. Mr. Atkinson pled guilty to one. If ever a case existed for departure on grounds not included in the guidelines, this is it. In fact, the district court made a point of saying that this was the first case it had encountered where an upward departure was demanded in the circumstances. App. Tab 5 at 22.
 
 
 38
 2. Infliction of Extreme Psychological Injury.
 
 
 39
 The PSR, adopted by the district court by reference, outlines the effect of Mr. Atkinson's threats on his victims as follows:
 
 
 40
 90. Ms. Gearheart, Mrs. Daugherty, and Ms. Wack related that they have suffered and continue to suffer "devastating" emotional and psychological injury as a result of Mr. Mr. Atkinson's threatening communications and behavior. They explained that they are extremely terrified that the defendant will carry out his threats (or direct someone else to), following his release from custody.
 
 
 41
 91. Ms. Gearheart, Mrs. Daugherty, and Ms. Wack stated that they have become "prisoners in our own homes," because of the "terrorism" Mr. Atkinson inflicted on them. They reported that they now have a "paralyzing fear" of going anywhere and of establishing close relationships with others. They also noted that "intimate relationships are completely unthinkable."
 
 
 42
 92. Ms. Gearheart related that she became "so distraught" in mid-October 1993, that she planned to commit suicide. She stated that she hoped Mr. Atkinson would "settle for my death and leave my mother, two daughters, and granddaughter alone."
 
 
 43
 93. Ms. Gearheart even wrote letters, to be opened upon her death, to her mother and two daughters explaining her reasons for committing suicide. She related that because of the defendant's arrest and her "faith in justice," she did not follow through with her plan.
 
 
 44
 94. Ms. Gearheart reported that she obtained mental health therapy to help her "with all this trauma." She is also taking medication following her therapist's recommendation. Mrs. Daugherty and Ms. Wack related that they intend to obtain mental health therapy following the defendant's sentencing when they hope to "feel safer."
 
 
 45
 95. Ms. Gearheart's therapist, Kirt Cundick, verified that Ms. Gearheart was suffering from significant psychological trauma. He related that Ms. Gearheart's lifestyle:
 
 
 46
 ... been substantially impacted by the constant threats and harassment instigated by her husband, and these effects should by no means be minimized.
 
 
 47
 Linda's greatest concern, at the present, is for the immediate safety of her family and herself, and she has become distraught in my office when discussing the potentially imminent release of her husband. I have no reason to believe that Linda has either fabricated or exaggerated the extent of her husband's brutal domination of her and her family during her marriage to him, or his blatant efforts to brutally coerce her into docility during the time they have been separated. Linda's response to these events has been typical of individuals who have suffered from long-term, chronic abuse.
 
 
 48
 96. Ms. Gearheart, Mrs. Daugherty, and Ms. Wack stated that their second greatest fear (second to Mr. Atkinson), is that "the Judge may not consider all of the information because of the volume of the letters." They also noted that "then he, [the Court] will not have the whole picture of how obsessed and determined Philip is to kill us."
 
 
 49
 ....
 
 
 50
 99. Ms. Gearheart's, Mrs. Daugherty's, and Ms. Wack's friends and neighbors also confirmed that "Mr. Atkinson's brutal stalking methods have irrevocably changed their lives." Some of their friends and neighbors related that they were so concerned about the danger Mr. Atkinson presented to "these women" that they submitted letters to the Court requesting that the defendant receive the maximum penalties for his crime (enclosed).
 
 
 51
 Supp.R.Vol. II at 29-32.
 
 
 52
 Based on these facts, the district court expressly found that Mr. Atkinson's threats caused such "extreme psychological injury to the victims of [the] offense" that a departure upward under USSG Sec. 5K2.3 was warranted. App. Tab 6 at 10. In Okane we stated that the district court must precede its finding of extreme injury with a finding based on evidence, of what normal injury would be. See USSG Sec. 5K2.3. The court did not do so here. However, Okane does not require us to conclude that the district court erred. First, Okane established a general rule, but it did not and could not purport to address every circumstance in every conceivable case. Second, we have never required empty form when the substance is evident.
 
 
 53
 Thus, for example, in a case where a person receiving a threat drops dead of shock, no one can seriously argue that the district court should make a separate express finding that "normal" injury from receiving a threat does not include dropping dead. Some things are self-evident. This is one of those cases. The court's finding and these facts clearly subsume the predicate finding that "normal" injury (whatever "normal" might be) from the communication of a threat covered under USSG Sec. 2A6.1 does not include the entire panoply of plans for suicide, being a prisoner in one's home, foreclosure from new relationships, ongoing medical care and medication, irrevocable lifestyle changes attested to by neighbors, friends, and a therapist, and more. USSG Sec. 5K2.3 expressly provides that injuries of this magnitude would be sufficiently severe to warrant an upward departure under that section. Departure is warranted--
 
 
 54
 ... when there is substantial impairment of the ... psychological emotional or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms, or by changes in behavior patterns.
 
 
 55
 USSG Sec. 5K2.3.
 
 
 56
 It would be an utterly empty exercise for us to send this back to the district court for it to intone that what the victims suffered was not normal injury--or to have an "expert" say so. The rule in this circuit is that:
 
 
 57
 As we understand our appellate responsibility as set out in Williams, we should not remand if we are satisfied, as we are, that the district court would impose the same, reasonable sentence if we required it to articulate with the detail specified in Jackson and its progeny.
 
 
 58
 See United States v. Tisdale, 7 F.3d 957, 965, n. 8 (10th Cir.1993). It cannot be doubted that the district court would make the same USSG Sec. 5K2.3 departure finding on remand, and we should not burden the process by insisting on the exercise. See United States v. O'Dell, 965 F.2d 937, 939 (10th Cir.1992).
 
 B.
 DEGREE OF DEPARTURE FOR CONDUCT AND INJURY
 
 59
 Our mechanistic approach to departure sentences requires the district court to state separately the reasons for departure and the degree of that departure both for offense level and for criminal history category, and comes close to requiring the district court to analogize degrees of departure to increments within the guidelines.
 
 
 60
 The latter is more easily said than done. By definition, a departure from the guidelines begins with the premise that there is no place within the guidelines to fix the punishment called for in the circumstances. Yet, we require the district court to engage in the fiction that there is such a place if one just "analogizes." At the least, this turns district courts into a multitude of mini-sentencing commissions; at most it invites an exercise in creative rationalization which makes sense only in the sense that the circuit demands something that looks mechanical. In this exercise we have forgotten the most fundamental rule of all, acknowledged by us in Tisdale at 965, but mostly ignored before and after:
 
 
 61
 In Williams [v. United States, --- U.S. ----, 12 S.Ct. 1112, 1120 (1992) ], the Supreme Court emphasized the fact that the appellate review of sentences permitted by the Sentencing Reform Act is limited and does not "alter a court of appeals' traditional deference to a district court's exercise of its sentencing discretion." The Court went on to say:
 
 
 62
 The development of the guideline sentencing regime has not changed our view that, except to the extent specifically directed by statute, "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence."
 
 
 63
 (quoting Solem v. Helm, 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3010 n. 16, 77 L.Ed.2d 637 (1983)).
 
 
 64
 As we noted in Tisdale, by virtue of that deference courts of appeals have approved departure sentences as to armed career criminals ranging from 204 months to 600 months, to give just one example. Id. at 964-65.
 
 
 65
 Here, the district court selected 48 months' imprisonment instead of an available 27-month sentence at the top of the guideline for level 16, criminal history category I. Thus, the district court departed upward six offense levels for an additional 21 months' imprisonment. It is important to keep in mind that this degree of departure stemmed from not one, but two grounds for departure: egregious conduct, and causing extreme psychological injury.
 
 
 66
 The general dimensions of both are set out above. The volume, duration, malicious and shocking nature of Mr. Atkinson's threats not just to Ms. Gearheart but to her family, including minors, were expressly taken into account by the district court. By reference to the PSR, the district court also had before it the degree of planning, orchestration, preparation, and variety which characterized Mr. Atkinson's conduct and the injury caused. We are tempted to attach all of the communications initiated and actions taken by him, but reference to the record is sufficient.
 
 
 67
 The point is that the conduct is essentially unique in its dimension and detail, and the resulting psychological injury extreme. It is practically impossible to make a rational mechanical analogy from this conduct to guideline offense level increments relating to other conduct. There are no comparable cases decided from which to draw uniformity, and proportionality is part of the issue.
 
 
 68
 Under the guidelines, Mr. Atkinson's conduct for the single threat to which he pled guilty dictates an offense level of 12. An increase of just one-half that amount, i.e., another six levels, is not inappropriate for an entire campaign of terror, including up to 80 communications. Again, this is a matter of discretion which the district court clearly cannot be said to have exercised unreasonably here by adding six levels, resulting in a 21-month increase.
 
 C.
 DEPARTURE ON CRIMINAL HISTORY GROUNDS
 
 69
 The district court first concluded Mr. Atkinson's "other criminal conduct has not been computed in a calculation of the criminal history category of one and, therefore, an upward departure is based upon the inadequacy of the criminal history and is therefore warranted." (App., Tab 6 at 9.) Without making an explicit statement on the record as to precisely what "other criminal conduct" was being referred to, the court simply referred counsel to the presentence report. (Id.) Paragraphs 122 through 124 in the revised presentence report are under the heading "Other Criminal Conduct." The information contained therein, which the defendant has not challenged, reveals that on February 19, 1994, Mr. Atkinson refused to follow the orders of officers at the Salt Lake County jail who were trying to move him to another cell. The officers stated Mr. Atkinson "put up his fists," repeatedly refused to comply with direct orders and "threw several punches" at one officer while trying to kick another. (Rev. PSR, paragraphs 122-23.) As a result of this behavior, Mr. Atkinson was charged in a prison disciplinary proceeding with Committing a Criminal Act and Failing to Obey Rules. He was found guilty, in absentia, after refusing to attend the hearing and he was sentenced to seven days administrative segregation as punishment.[4] (Id. at 124.)
 
 
 70
 As with the departure grounds of conduct and injury, the first step of our review requires us to ask whether the Sentencing Commission adequately considered a defendant's prison disciplinary record so as to permit a departure on this basis. Our decision in United States v. Keys, 899 F.2d 983 (10th Cir.), cert. denied, 498 U.S. 858 (1990), is dispositive on this point. We held "the Sentencing Commission did not adequately consider a defendant's possible prison disciplinary record when it formulated Guidelines sections 4A1.1 through 4A1.3 and 2P1.2." Id. at 990. Therefore, a prison disciplinary record is a valid ground for an upward departure to the criminal history score as long as that score "significantly underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." Id. at 989 (emphasis in original) (quoting Sec. 4A1.3). Mr. Atkinson does not argue his criminal history score is not "significantly" underrepresented, nor does he dispute there is a factual basis for the district court's determination. Therefore, we turn to step three to examine the reasonableness of the degree of departure.
 
 
 71
 In this case, the district court did not specifically articulate its reasons for departing from level I to level II; rather, the court simply referred counsel to the entirety of the presentence report without explaining its methodology as to the degree of departure. We do not believe that in this instance a reference to the presentence report satisfies the dictates of our prior cases requiring the sentencing court to explain why it believed a particular degree of departure was appropriate. See e.g., Okane, 52 F.3d at 836-37 (citing cases); see also United States v. Jackson, 921 F.2d 985, 993 (10th Cir.10/990) (en banc) ("It is not our task to determine what a district court's explanation for a departure could be"). While it is true the degree of departure here was one category--from I to II--we have previously rejected the argument that such a departure is, ipso facto, reasonable because it is the minimum departure. See United States v. Flinn, 987 F.2d 1497, 1503-04 (10th Cir.1993). This is true because of the mechanics of criminal history category assignments, which are determined by calculating the sum total of a specified number of criminal history points. Id. at 1503. As such, it is conceivable a district court could assign a defendant additional criminal history points without raising the defendant's criminal history category. Id. at 1504. Therefore, a remand is necessary with respect to the criminal history departure. On remand, the district court should identify the specific criminal conduct it is relying on to support the departure and couch the degree of departure in terms of why the criminal history category is inadequate. We observe that this may be accomplished with the use of analogies and other references demonstrating a reason why a particular degree of departure was selected. See Okane, 52 F.3d at 837.
 
 
 72
 We remand on this point reluctantly because without regard to that increase, the district court could still have imposed a 48-month sentence of imprisonment. A six-level upward departure in offense level, to level 22 and criminal history category I, results in a guideline range of 41-51 months. Thus, contrary to the Supreme Court's instructions in Williams and O'Dell, we are again requiring a resentencing where the outcome will probably be the same.
 
 CONCLUSION
 
 73
 We REMAND the case to the district court with instructions to VACATE the sentence and resentence Mr. Atkinson in accordance with this order.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Mr. Atkinson's unadjusted base offense level for this offense was twelve. See USSG Sec. 2A6.1(a). Rev. PSR, p 110. If, however, the offense in question "involved any conduct evidencing an intent to carry out such threat" (i.e., an overt act), then a six level increase is permitted. USSG Sec. 2A6.1(b)(1). At the change of plea hearing, the government acknowledged it "did not see any overt act actually carried out," App., Tab 4 at 18, thereby making Sec. 2A6.1(b)(1) inapplicable. Although the probation officer believed this specific offense characteristic should be applied in this case, Rev. PSR, p 111, the district court did not believe it was warranted and declined to apply it. App., Tab 5 at 15
 
 
 [2]
 At least one of the threatening letters was sent to Mr. Atkinson's mother-in-law, Mrs. Dougherty, a 63-year-old woman who weighed 77 pounds and who was confined to a wheelchair because her right leg had been amputated. Rev. PSR, p 23
 
 
 [3]
 As noted, the district court agreed to postpone the initial sentencing in this case because it believed the defendant had not received prior notice of the court's intent to depart upwards under Sec. 5K2.3. App. Tab 5 at 20. The court reached this conclusion even though the initial presentence report clearly stated that a departure under Sec. 5K2.3 might be appropriate. Init. PSR, p 224. Furthermore, the entire transcript of the initial sentencing hearing makes it abundantly clear the district court was only considering an upward departure based on Sec. 5K2.3 and the psychological injury to the victims and not on the basis of any alleged inadequacy in the criminal history score. See, e.g., United States v. Okane, 52 F.3d 828, 832 (10th Cir.1995) (emphasizing the distinction between departures premised on the deficiencies in the offense level and those premised on the inadequacy of the criminal history score)
 While the initial presentence report suggests an upward departure to the criminal history category might be warranted partly because of Mr. Atkinson's conduct in jail, the redacted report omitted any reference to this conduct as a basis for a departure under Sec. 4A1.3(e). But at the second sentencing hearing, the court did in fact depart upwards on this ground, finding the criminal history score inadequate. Presumably, the basis for this departure was his conduct in jail since the only other basis for a criminal history score departure--Mr. Atkinson's relationships with his prior wives--was ordered stricken from the record. App., doc 5 at 13.
 The Supreme Court held:
 before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a rehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling. This notice must specifically identify the ground on which the district court is contemplating an upward departure.
 Burns v. United States, 501 U.S. 129, 138-39 (1991). While an argument could be advanced that Mr. Atkinson did not receive appropriate notice of the court's intent to depart upward because of the inadequacy of the criminal history score--given that such a departure was mentioned only in the initial presentence report and was deleted from the redacted report--Mr. Atkinson has not raised a claim he was denied notice. Therefore, we do not consider this issue.
 
 
 [4]
 The record contains no formal documentation of these administrative proceedings; however, because Mr. Atkinson has not challenged any of these facts, the government is not required to prove them by a preponderance of the evidence. See United States v. Yates, 22 F.3d 981, 989 (10th Cir.1994) ("Only facts that are contested at a sentencing hearing must be established by a preponderance of the evidence" (citation omitted)